**Jud WALTON, Appellant,**

v.

**CITY OF MIDLAND, Texas, Arcadis Geraghty & Miller, Inc., Geraghty & Miller, Inc., Ed L. Reed & Associates, Inc., A. Joseph Reed, Ed L. Reed, Black & Veatch, L.L.P., Black & Veatch Pritchard, Inc., Mobil Oil Corporation, Exxon Corporation, and Timber Floyd, Appellees.**

No. 08–99–00011–CV

Court of Appeals of Texas, El Paso.

April 27, 2000.

Jud Walton, Midland, pro se.

Robert Lee Soza, Jenkens & Gilchrest, Jonathan Scott Miles, San Antonio, Joel B. Locke, James E. Nelson, Shafer, Davis, McCollum, Ashley, O'Leary & Stoker, Odessa, Terry Rhoads, Julia E. Vaughan, Cotton, Bledsoe, Tighe & Dawson, Midland, Brian S. West, Houston, John A. 'Jad' Davis, Turner & Davis, Marc L. Skeen, Stubbeman, Rodney W. Satterwhite, Pat Long Weaver, McRae, Sealy, Laughlin & Browder, Keith Stretcher, City Attorney, Chadwick Weaver, James P. Boldrick, Dick R. Holland, Boldrick, Clifton, Holland & Essman, Midland, J.H. 'Timber' Floyd, Jr., Midland, for Appellee.

Before Panel No. 3 BARAJAS, C.J., LARSEN, and CHEW, JJ.

## *O P I N I O N*

DAVID WELLINGTON CHEW, Justice.

This is an appeal from a grant of summary judgments in a case for contamination of groundwater. Appellant brings five issues: (1) that the Appellees were granted more relief than requested in their motions for summary judgment; (2) that summary judgment was improper for the relief requested because the Appellees failed to establish all the elements of the affirmative defense of limitations; (3) that summary judgment was improper on the issue of temporary damages because the Appellees failed to conclusively establish that Appellant's damages were permanent in nature; (4) that discovery sanctions imposed by the trial court were more severe than required to satisfy legitimate purposes and were therefore not just as a matter of law; and (5) that Appellant's attorney provided ineffective assistance of counsel which allowed opposing counsel to perpetrate a deception on the trial court, resulting in unwarranted sanctions against Appellant. We will affirm in part and reverse in part the judgment of the trial court and remand the case to the trial court for further proceedings.

▆ Unlike other final judgments reviewed on appeal, we do not review the summary judgment evidence in the light most favorable to the judgment of the trial court. *See Borrego v. City of El Paso,* 964 S.W.2d 954, 956 (Tex.App.—El Paso 1998, pet. denied). As explained in *Nixon v. Mr. Property Management Co., Inc.,* 690 S.W.2d 546, 548–49 (Tex.1985), the movant for summary judgment has the burden of showing there is no genuine issue of material fact and that it is entitled to summary judgment as a matter of law. *See* Tex. R.Civ.P. 166a(c). In deciding whether there is a disputed material fact issue pre-

cluding summary judgment, all admissible evidence favorable to the non-movant will be taken as true; every reasonable inference must be indulged in favor of the non-movant, and all doubts resolved in the non-movant's favor. The movant is required to disprove at least one element of each of the non-movant's theories of recovery or to plead and conclusively establish an affirmative defense, which defeats the non-movant's cause of action. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 679 (Tex.1979). The purpose of summary judgment is the elimination of patently unmeritorious claims or untenable defenses; it is not intended to deprive litigants of their right to a full hearing on the merits of any real issue of fact. *See Gulbenkian v. Penn*, 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952); Hon. David Hittner & Lynne Liberato, *Summary Judgments in Texas*, 34 Hous.L.Rev. 1303, 1307 (1998).

In his Issue One, Appellant contends that the trial court granted more relief than was requested by the Appellees in their summary judgment motions. We agree. Appellant contends that the Appellees' motions for summary judgment only addressed the issue of permanent damages. In his second amended petition, Appellant pleaded that his damages were temporary, or in the alternative, were permanent in nature. None of the motions for summary judgment filed by Appellees attempt to establish that Appellant's damages are permanent in nature.[1] Appellee City of Midland's motion plainly states that it is in regard to the claim for perma-

nent damages only. Similarly, the Appellees' other motions either fail to attempt to establish that Appellant's damages were permanent or state that the motion applies to Appellant's claim for permanent damages.[2]

Although there are several appellees named in this appeal, they can be grouped into four categories.[3] The City of Midland, Timber Floyd, Black & Veatch, L.L.P., and Black & Veatch Pritchard ("City of Midland") are one group. Arcadis Geraghty & Miller, Inc., Geraghty & Miller, Inc., Ed L. Reed & Associates, Inc., A. Joseph Reed, and Ed L. Reed ("the Professional defendants") are another. Mobil Oil Corporation and Exxon Corporation are each proceeding on their own. We will address each of the Appellees' arguments separately where necessary.

Although Exxon has filed its own brief, in all respects it is identical to the position of the City of Midland in regard to whether the trial court granted more relief than was requested. Timber Floyd, Black & Veatch, L.L.P., and Black & Veatch Pritchard filed motions to adopt the position of City of Midland in its brief. The City of Midland and Exxon argue that the trial court had the authority to grant summary judgment on the issue of whether the damages were temporary or permanent by virtue of the fact that the City of Midland had filed a prior motion for summary judgment that addressed the issue of temporary damages. This motion was never denied by the trial court through a signed order, but the trial court judge sent

---

1. Damages may be temporary *or* permanent in nature, they cannot be both. *See Kraft v. Langford*, 565 S.W.2d 223, 227 (Tex.1978). Thus, if Appellees had established that Appellant's damages were permanent in nature, the trial court could have granted a final summary judgment if it had also found that Appellant's claims were barred by limitations.

2. Appellees Arcadis Geraghty & Miller, Inc., Geraghty & Miller, Inc., Ed L. Reed & Associates, Inc., A. Joseph Reed, and Ed. L. Reed ("Professional defendants") state in their first amended motion for summary judgment that

any claims for temporary damages prior to May of 1996 are time-barred by the two-year statute of limitations. This issue is not before us, but this statement does not establish that Appellant's damages were permanent in nature.

3. Monty Gist and Texaco, Inc., were originally parties to this appeal as Appellees, but were later dismissed from this appeal on the request of Appellant on July 21, 1999, and May 27, 1999, respectively.

a letter to all parties indicating that he intended to deny the motion. In his response to the City's second motion and the other motions for summary judgment, Appellant asked the trial court to take judicial notice of the City's prior motion. There is no indication that the trial court agreed to do so. Also, there is no indication that Exxon, Timber Floyd, Black & Veatch, L.L.P., and Black & Veatch Pritchard ever filed a motion to adopt the City's position in its first motion for summary judgment. We do not believe that they can seek for the first time on appeal to adopt the position of the City of Midland in its first motion for summary judgment. They were not parties to the suit when the City filed its first motion for summary judgment. We will allow the City of Midland alone to advance any argument that the trial court could have considered the first motion for summary judgment when it granted the City's second motion.

 The City contends that Appellant's request for the trial court to take judicial notice of the first motion for summary judgment put the issues in the motion before the trial court. We agree that it is proper for the trial court to take judicial notice of its own record. *See Gardner v. Martin*, 162 Tex. 156, 158, 345 S.W.2d 274, 276 (1961); *Jones v. Jones*, 888 S.W.2d 849, 852–53 (Tex.App.—Houston [1st Dist.] 1994, no writ). We do not hold this to mean that a party is requesting the trial court to reconsider a prior motion. The City further argues that the trial court had discretion to reverse a prior decision to deny a motion for summary judgment. This is true. *See H.S.M. Acquisitions, Inc. v. West*, 917 S.W.2d 872, 876–77 (Tex.App.—Corpus Christi 1996, writ denied). However, we have no indication from the trial court that it actually reconsidered the City's prior motion for summary judgment. The order granting partial summary judgment refers exclusively to the City's second motion for summary judgment. The City has failed to

provide any evidence that the trial court meant to grant the City's first motion for summary judgment. We will sustain Appellant's Issue One as to the City. Summary judgment should not have been granted on the issue of temporary damages.

 We will also sustain Appellant's Issue One as to Exxon Corporation, Mobil Oil Corporation, Timber Floyd, Black & Veatch, L.L.P., and Black & Veatch Pritchard. These Appellees failed to establish that Appellant's damages were permanent in nature, thus Appellant may still seek temporary damages against these Appellees. A trial court cannot grant more relief than is requested in a motion for summary judgment. *See Steinkamp v. Caremark*, 3 S.W.3d 191, 198 (Tex.App.—El Paso 1999, pet. filed). We reverse the trial court's grant of summary judgment as to these defendants on the issue of temporary damages.

Additionally, Appellant argues in his reply brief that the Appellees failed to address his causes of action for a continuing tort and for injunctive relief in their motions for summary judgment, and requests that we remand on these claims as well. In its second motion for summary judgment, the City addresses the issue by arguing that the continuing tort doctrine is not applicable to causes of action for permanent damages. This does not equate to conclusively establishing that Appellant does not have a cause of action for a continuing tort. Neither the City nor any other Appellee, except the Professional defendants, addressed the issue of injunctive relief. We reverse and remand the grant of summary judgment as to a continuing tort and injunctive relief also.'

 We are able to affirm the trial court's grant of final summary judgment to the Professional defendants on all causes of action because they filed a no-evidence motion for summary judgment pursuant to Tex.R.Civ.P. 166a(I), alleging that Appellant could not prove the element

of causation in his causes of action against them. Appellant argues for the first time on appeal that the no-evidence motion does not meet the requirements of the rule. He did not raise this objection in the trial court, and has therefore waived it for review. *See* TEX.R.APP.P. 33.1.

A no-evidence summary judgment is properly granted if the non-movant fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to an essential element of the non-movant's claim on which the non-movant would have the burden of proof at trial. *See* TEX.R.CIV.P. 166a(I); *Taylor–Made Hose, Inc. v. Wilkerson,* 21 S.W.3d 484, 486 (Tex.App.—San Antonio 2000, no pet. h.)(op. on reh'g). Appellant did not direct the trial court to any specific evidence to raise an issue of material fact on the element of causation as to the Professional defendants. Likewise, he does not direct this Court to any evidence that would allow us to conclude that he has raised an issue of material fact as to causation. Appellant attached some 500 pages of depositions and other evidence in support of his response to motions for summary judgment. He did not specify which were intended to show the element of causation on the part of the Professional defendants. Neither this Court nor the trial court were obligated to sift through a record of this size to find Appellant's evidence for him. *See Rogers v. Ricane Enterprises, Inc.,* 772 S.W.2d 76, 81 (Tex.1989)(holding that general references to a voluminous record do not direct trial courts and parties to evidence on which the movant relies). We hold that final summary judgment was proper as to the Professional defendants on all claims that Appellant asserted against them, and affirm the trial court's order.

In his second issue, Appellant contends that summary judgment is precluded on the issue of permanent damages because Appellees failed to establish that his claims

were barred by limitations. We disagree. The parties bitterly disagree as to when Appellant's causes of action accrued. Appellant claims that his causes of action did not accrue until November 18, 1994, when Appellant received a report from the Texas Railroad Commission that indicated that the contamination of his groundwater was not from oil field sources. Appellees claim that Appellant's causes of action accrued in 1987 when Appellant contacted the Railroad Commission concerning a "blow down pit" that was located on Appellant's property. A summarization of the facts is necessary for the discussion of this issue:

September 28, 1987: Appellant makes a complaint to the Texas Railroad Commission ("Railroad Commission") concerning a blow down pit left on his land by El Paso Natural Gas Company.

April 20, 1988: Appellant opines to the Commission that he is concerned the contents of the pit have or will contaminate the fresh water aquifer, and suggests that further testing needs to be carried out.

August 2, 1988: Appellant receives a letter from James Wright, Ph.D., an environmental consultant he hired to examine some of the Commission's tests. Wright stated that he thought it was possible that some of the substances in the pit had already reached the water table.

January 12, 1989: Appellant received a letter from the Commission, informing him that "some vertical migration of the wastes that were contained in the pit over its 30–year history occurred."

May 13, 1993: Appellant receives a letter from the Texas Water Commission ("Water Commission") concerning a March 18 complaint. He is informed that the Railroad Commission retains jurisdiction, but is told that further soil tests are advisable to determine if the groundwater has been contaminated.

September 24, 1993: Appellant meets with Railroad Commission employees regarding a second complaint concerning the contamination of groundwater.

November 18, 1994: Appellant is told that the contamination to his groundwater is not from oil field sources.

March 5, 1998: Appellant admits in his deposition that he contacted the Water Commission in 1993 because he had concerns about his groundwater.

■ Although Appellant pleaded the doctrine of fraudulent concealment in his supplemental petition, he failed to raise the issue in his responses to the Appellees' motions for summary judgments, and therefore the issue is waived. *See KPMG Peat Marwick v. Harrison County Housing Finance Corp.*, 988 S.W.2d 746, 749–50 (Tex.1999). Appellant never raised the discovery rule as an issue.

■ Even if we agreed with Appellant's contention that his cause of action did not accrue until November 18 of 1994,[4] he was still required to file suit against all parties no later than November 18 of 1996. *See* Tex.Civ.Prac. & Rem.Code Ann. § 16.003 (Vernon Supp.2000). Appellee Mobil Oil Corporation argues that since it was not sued until May 18, 1998, the statute of limitations bars Appellant from pursuing permanent damages against it. We agree. Mobil was not timely sued, and Appellant cannot pursue permanent damages against it. Additionally, he can only pursue temporary damages against Mobil for two years prior to May 18, 1998.[5] *See Bayouth v. Lion Oil Co.*, 671 S.W.2d 867, 868 (Tex.1984); *City of Odessa v. Bell*, 787 S.W.2d 525, 530 (Tex.App.—El Paso 1990, no writ).

Appellant filed suit against the City of Midland on November 15, 1996. Even if we indulge every doubt in favor of Appellant, the non-movant below, we still conclude that he knew or should have known by 1993, that there was an actionable injury to his land and groundwater. Appellant contends, and we will assume for the purposes of argument, that the 1987 complaint related to the blow down pit was resolved before Appellant made his 1993 complaint to the Water and Railroad Commissions.

■ Generally, a cause of action accrues when a wrongful act causes an injury regardless of when the plaintiff learns of the injury. *See Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990); *Mitchell Energy Corp. v. Bartlett*, 958 S.W.2d 430, 436 (Tex.App.—Fort Worth 1997, pet. denied). Regarding claims for permanent injury to property, Texas law is especially clear that the action accrues and the statute of limitations begin to run "upon discovery of the first actionable injury and not on the date when the extent of the damages to the land are fully ascertainable." *Bayouth*, 671 S.W.2d at 868. An action for permanent damages to property must be brought within two years from the time of discovery of the injury. *See id.* Moreover, knowledge of facts that could cause a reasonably prudent person to make an inquiry that would lead to discovery of the cause of action is "in the law equivalent to knowledge of the cause of action for limitation purposes." *Bayou Bend Towers Council of Co–Owners v. Manhattan Constr. Co.*, 866 S.W.2d 740, 747 (Tex.App.—Houston [14th Dist.] 1993, writ denied).

---

4. In his response to the City's first motion for summary judgment, Appellant filed an affidavit in which he stated, "[t]he first notice I had that my groundwater had been contaminated was on November 18, 1994 when the RRC [Railroad Commission] advised me that the City was the source of contamination of my groundwater."

5. Presumably, this same argument would apply to Appellees Exxon Corporation, Timber Floyd, Black & Veatch, L.L.P., and Black & Veatch Pritchard. Exxon filed its own brief, but fails to raise the issue. Timber Floyd, Black & Veatch, L.L.P., and Black & Veatch Pritchard adopted the City of Midland's brief which does not raise the issue because the City was sued on November 15, 1996.

This rule is borne out by common sense. "Permanent injuries to land result from an activity of such a character and existing under such circumstances that it will be presumed to continue indefinitely; the injury must be constant and continuous, not occasional, intermittent or recurrent." *Bayouth*, 671 S.W.2d at 868. Because a permanent injury to land is continuous and ongoing, a rule that did not require limitations to begin running upon discovery of the injury would invite abuse. For instance, an injured party might be tempted to wait an indefinite period before ascertaining the full extent of damages and filing suit, in hopes of maximizing a potential damages award. *See Mitchell Energy Corp.*, 958 S.W.2d at 436.

Here, Appellant admitted that he contacted the Texas Water Commission in 1993 because he had concerns about his groundwater. The Water Commission told Appellant that based on their analysis of correspondence received by him, "contamination persists downward to the 17 foot depth interval. . . ." The Commission further recommended that testing be done to determine the lower limits of contamination, and told Appellant that if the testing revealed that the contamination had reached the groundwater, a monitor well could then be set up. We believe this evidence unequivocally establishes facts that would cause a reasonably prudent person to make inquiry into whether his groundwater was contaminated.[6] In fact, Appellant did so. He contacted the Rail-road Commission and asked them for assistance. Appellant simply chose to wait until more evidence had been developed before he filed his claim. This is not permissible.

Appellant complains in an affidavit that the Railroad Commission's investigation dragged on for a year. However, Appellant could have taken independent action to establish just what and who were contaminating his groundwater. Appellant also contends that the statute of limitations could not begin to run because he did not know the source of contamination. There are two problems with this position. The first is that Texas courts have not held that it is absolutely necessary to know the source of an injury for limitations to begin to run. *See Russell v. Ingersoll–Rand Co.*, 841 S.W.2d 343, 344 n. 3 (Tex.1992). The second is that although Appellant claims that his injury accrued around November 18, 1994, when he received a report from the Railroad Commission that ruled out the oil field sources, this letter did not *identify the source of the contamination.* Thus, he defeats his own argument that limitations could not run as long as he did not know the source of the contamination. He did not know the source when he claims limitations began to run.

Appellees conclusively established that Appellant's claims for permanent damages were barred by the applicable statute of limitations. We overrule Appellant's Issue Two.

In his Issue Three, Appellant contends that the summary judgment evidence does not conclusively establish that his damages were permanent in nature, and thus the trial court erred in granting summary judgment. This has already been addressed in Appellant's Issue One, and is therefore moot.

In his Issue Four, Appellant contends that sanctions levied against him by the trial court were harsher than necessary, and were not just as a matter of law. We

---

6. Appellees rely on this evidence as well as other evidence in the record. For instance, Appellees contend that Appellant's actions accrued in 1993 because he reported in his September Complaint to the Railroad Commission that the water tasted "salty." However, in his deposition, Appellant stated that he had never told anyone the water tasted salty. Appellant also filed an affidavit stating that he did not receive any of the several reports made by the Railroad Commission after his September 1993 complaint. Because this is controverted evidence, Appellees cannot rely on it to establish their right to summary judgment.

disagree. Sanctions were imposed due to the destruction of Appellant's expert's work product.

Appellant retained James Wright, Ph.D. as an expert witness. Wright submitted an affidavit which was attached to Appellant's response to the City's first motion for summary judgment. Wright was deposed on March 10, 1998. At this point, the Appellees learned that Wright had not done any work on Appellant's case. Wright testified that after he received the necessary water samples, he would begin the process of analyzing that data as well as other data currently in his possession. He testified that it would take him approximately three to four weeks after receiving the data to prepare a report. The samples were gathered on March 23 and 24, 1998, and given to Dr. Wright on April 15, 1998. The City filed a motion requesting the opinion of the expert to be reduced to tangible form on July 6, 1998, after informal requests were unsuccessful. On July 16, the trial court entered an order requiring Wright to reduce his opinion to tangible form and provide it and the information he relied upon to all defendants by August 1, 1998.

In a letter dated July 27, 1998, Dr. Wright informed the trial court that he had not been employed by Appellant since the end of April 1998, and that he had destroyed his work product, documents generated or collected by him, maps, photographs, working papers, memoranda, letters, computer data, and notes, in its entirety. Appellant's counsel admitted to the trial court that on the day the trial court entered its order for Dr. Wright to reduce his opinions to tangible form, he and Appellant had previously received a letter from Dr. Wright dated May 1, in which Dr. Wright told Appellant he had destroyed his work product. Neither Appellant nor his counsel informed the trial court of the letter.

The City filed a motion for sanctions on August 5, 1998, in which it asked the trial court to strike Appellant's pleadings and dismiss the case, so-called "death penalty" sanctions. A hearing on the motion was conducted on August 14, 1998. Testimony revealed that Appellant had failed to pay Dr. Wright for his services. He also refused to approve costs for in-depth modeling. Around April 24, 1998, Appellant promised Dr. Wright his payment was forthcoming. When he was not paid, Dr. Wright destroyed his work product.

■ The trial court refused to impose death penalty sanctions, but instead ordered that Appellant was prohibited from utilizing Dr. Wright as a witness and as an expert, and that Appellant was prohibited from utilizing any work or opinions created or obtained by Dr. Wright. Appellant and his attorney were also ordered to pay to the City the sum of $4,715.10 as reimbursement for legal fees and costs associated with the attempts to obtain Dr. Wright's report. The defendants in the case were not under the same restriction regarding use of Dr. Wright as a witness, or the use of his information.

■ We review the imposition of sanctions under an abuse of discretion standard, but the trial court is guided by two principles: (1) a direct relationship must exist between the offensive conduct and the sanctions imposed; and (2) the sanctions must not be excessive. *See TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex.1991). We believe the trial court followed these principles in imposing sanctions on Appellant. In his brief, Appellant characterizes the incident as a fee dispute between him and Dr. Wright, and argues that the City was not prejudiced by not receiving the report. First, Appellant provides no record cites in the part of the argument where he describes the incident as a fee dispute. Second, the sanctions were necessary to safeguard against spoliation of evidence, which would undoubtedly prejudice the City. If Appellant was allowed to continue to employ Dr. Wright, he would have the benefit of Dr. Wright's prior ex-

amination of the land in question. Our jurisprudence does not permit parties to benefit from spoliation of evidence. *See Trevino v. Ortega,* 969 S.W.2d 950, 959–60 (Tex.1998). Appellant's good faith was called into doubt when he failed to inform the trial court that no report would be forthcoming. The fine against Appellant and his counsel is also reasonable as it was their behavior which induced the City to believe that a report had been prepared. If Appellant and his counsel had simply told the trial court that Dr. Wright had ended his representation, the City would not have incurred legal expenses in preparing motions to compel the expert's report. We hold that the sanctions imposed against Appellant were justified and not excessive, and overrule his Issue Four.

In his fifth and last issue, Appellant asks this Court to extend the doctrine of ineffective assistance of counsel to civil cases. He cites no authority in support of this proposition, and we decline to address the issue. We overrule Appellant's Issue Five.

We have disposed of all of Appellant's issues and affirm the trial court's grant of summary judgment as to all of Appellant's claims against the Professional defendants. We reverse the trial court's grant of summary judgments as to temporary damages, injunctive relief, and continuing tort as to the City of Midland, Timber Floyd, Black & Veatch, L.L.P., Black & Veatch Pritchard, Exxon Corporation, and Mobil Oil Corporation, and remand the case on these issues for further proceedings. We affirm the trial court's imposition of sanctions.