Affirmed and Opinion filed August 28, 2003









Affirmed and Opinion filed August 28, 2003.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00731-CV

____________

 

ALBERT CHERQUI, Appellant

 

V.

 

WESTHEIMER STREET FESTIVAL
CORPORATION, CITY OF HOUSTON

& JOHN BRYSON, Appellees

 



 

On Appeal from the 215th District Court

Harris County, Texas

Trial Court Cause No. 00-15665

 



 

O
P I N I O N








In
this personal injury action, Albert Cherqui appeals from a judgment entered in
favor of the Westheimer Street Festival Corporation (the ACorporation@),
the City of Houston (the ACity@), and John Bryson (collectively Aappellees@).  Appellant asserts the trial court erred in
granting a directed verdict: (1) to the Corporation, because a fact question
exists regarding (a) whether off-duty police officers were acting to enforce
public laws and (b) whether the Corporation could sufficiently control the
officers=
actions; (2) to the City, because fact questions exist regarding (a) the
placement of no-parking signs and (b) proximate cause; (3) to Bryson because
there was insufficient evidence to establish he acted in good faith; (4) to all
appellees because the trial court did not determine whether there was effective
assistance of counsel.  Appellant also
contends the trial court erred in excluding evidence regarding the outcome of
his criminal trial and in allowing Bryson to change his discovery responses one
week before trial was to begin.  We
affirm.

I.  Background

Officer
Bryson and several other Houston Police Department (AHPD@)
officers had been assigned by HPD=s Special Operations Division to
work an extra job at the Westheimer Street Festival on October 11, 1998.  They were instructed to issue parking
citations and tow illegally parked cars from the surrounding neighborhoods,
including the street where appellant resides. 
An officer was ticketing appellant=s car when appellant came out of his
home and questioned the officer=s actions.  The officer advised appellant he was illegally
parked and the car would be towed if it was not moved.  As appellant proceeded to move the vehicle
into his driveway, he spun his wheels. 
Because of this action, the officer decided to issue a citation to
appellant for violating a city ordinance and requested appellant=s
identification.  Bryson and another
officer accompanied appellant into his home to retrieve appellant=s
driver=s
license.  According to appellant, as the
officers exited the house, appellant C admittedly irritated C
told Bryson to get out of his house and attempted to close his front door;
however, Bryson was in the way. 
Appellant testified that Bryson pushed the door, forcing appellant
backwards.  Appellant fell and injured
his wrist.[1]  The injury required several surgeries. 








Appellant
filed suit against the City under the Texas Tort Claims Act alleging negligent
use of tangible property, that is, handcuffs and the temporary no-parking
signs, and filed claims against the Corporation under the theory of respondeat
superior.  Appellant filed suit against
Bryson for bodily injury.  The case
proceeded to trial and following the close of the evidence, appellees moved for
a directed verdict on various grounds. 
The trial court granted the directed verdict, dismissed the case, and
ordered that appellant take nothing. 
This appeal ensued.  

II.  Discussion

A.  The ANot Guilty@ Verdict

For
the sake of brevity, we address appellant=s latter issues first.  Appellant argues the trial court erred in
excluding the Anot guilty@
verdict rendered in his criminal trial resulting from the incident between he
and Bryson.  However, there is nothing in
the record indicating that appellant ever attempted to offer the verdict into
evidence or that the trial court made a ruling excluding it.








Texas
Rule of Evidence 103 provides that error may not be predicated upon a ruling to
exclude evidence unless a party=s substantial right has been
affected and the substance of the evidence is either apparent or made known to
the court.  Tex. R. Evid. 103. 
Moreover, to complain on appeal about a matter that would not otherwise
appear in the record, a party must file a formal bill of exception.  Tex.
R. App. P. 33.2.  Here, appellant
does not cite to that portion of the record wherein he attempted to introduce
evidence of the verdict, nor have we found any such record.[2]  The record also fails to contain any bill of
exception.  Accordingly, appellant has
failed to preserve this issue on appeal and it is therefore overruled.  See Tex.
R. App. P. 33.1 (error not preserved if record fails to show complaint
was brought to the attention of the trial court by timely request, objection,
or motion and trial court ruled on the request); see also Tex. R. App. P. 38.1(h) (brief must
contain appropriate citations to the record in support of argument); Richards
v. Comm=n for Lawyer Discipline, 35 S.W.3d 243, 251 (Tex. App.CHouston [14th Dist.] 2000, no pet.) (finding waiver
where appellant never attempted to offer the evidence).  

B.  Amendment
of Discovery Responses

Likewise,
there is nothing in the record regarding appellant=s
argument that the trial court erred in allowing Bryson to amend his answers to
admissions and interrogatories.  

Under
Rule 193.5 of the Texas Rules of Civil Procedure, if a party learns that his
response to written discovery is incomplete or incorrect, he has the duty to
supplement or amend his response Areasonably promptly@
after he discovers the necessity for a corrected response.  Tex.
R. Civ. P. 193.5.  Generally, if
an amended or supplemental response is filed less than thirty days before
trial, it is presumed that the response was not made Areasonably
promptly.@ 
Id.  To supplement a
discovery response less than thirty days before trial, a party must show good
cause or show that late supplementation will not unfairly surprise or prejudice
the other party.  Tex. R. Civ. P. 193.6. 
If the party offering the evidence does not establish good cause and the
trial court admits the evidence over the opposing party's objection, the
objecting party must show that the trial court=s error caused rendition of an
improper judgment.  Bott v. Bott,
962 S.W.2d 626, 628 (Tex.
App.CHouston [14th Dist.] 1997, no pet.); Tex. R. App. P. 41.1(a)(1).








In
this case, appellant apparently raised this issue for the first time in his
Motion for New Trial, which he filed pro se. 
There is nothing in the record however evidencing appellant=s
claims regarding the issue.  Bryson=s
motion is not included in the record nor is there any indication that a hearing
on the motion was held.  Without any
evidence in the record on this issue, appellant has presented nothing for our
review.  See Tex. R. App. P. 33.1; Tex. R. App. P. 38.1(h); Vacek
Group, Inc. v. Clark, 95 S.W.3d 439, 442 (Tex. App.CHouston [1st Dist.] 2002, no pet.) (finding appellant
presented nothing for review when it made conclusory statements without
citations to the record).  Accordingly,
we also overrule this issue.  We now
address appellant=s issues regarding the directed
verdicts.

C.  Directed
Verdict Standard of Review 

A
directed verdict is proper if no evidence of probative force raises a fact
issue on the material questions in the suit. 
Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc., 29 S.W.3d
74, 77 (Tex. 2000).  A directed verdict
for a defendant may be proper in two situations: (1) when a plaintiff fails to
present evidence raising a fact issue essential to the plaintiff=s
right of recovery; and (2) if the plaintiff admits or the evidence conclusively
establishes a defense to the plaintiff=s cause of action.  Id. 
When reviewing a directed verdict, we consider all the evidence in the
light most favorable to the party against which the verdict was rendered, and
disregard all evidence and inferences to the contrary.  Encina P=ship v. Corenergy, L.L.C., 50
S.W.3d 66, 68 (Tex. App.CCorpus Christi 2001, pet. denied); Mayes v.
Stewart, 11 S.W.3d 440, 450 n.4 (Tex. App.CHouston [14th Dist.]
2000, pet. denied).  If there is no
evidence of probative force on an ultimate fact element, the trial court has
the duty to instruct the verdict.  Encina
P=ship, 50 S.W.3d at 68; see
Columbia/HCA of Houston, Inc. v. Tea Cake French Bakery & Tea Room, 8
S.W.3d 18, 22 (Tex. App.CHouston [14th Dist.] 1999, pet. denied).

1.  Effective
Assistance of Counsel








Appellant
argues the trial court erred in granting the directed verdicts Aas
there was ineffective assistance of counsel.@ 
However, it is well established that the doctrine of ineffective
assistance of counsel does not extend to civil cases.  Stokes v. Puckett, 972 S.W.2d 921, 927
(Tex. App.CBeaumont 1998, pet. denied); Walton v.
City of Midland, 24 S.W.3d 853, 862 (Tex. App.CEl Paso
2000, no pet.).  The Sixth Amendment of
the United States Constitution and Article I, Section 10 of the Texas
Constitution provide that Ain all criminal prosecutions,
the accused shall enjoy the right . . . to have the assistance of counsel for
his defense.@ 
U.S. Const. amend. VI; Tex. Const. art. I, '
10 (emphasis added).  Thus, by their
plain language neither the Sixth Amendment nor Article I, Section 10 apply to
civil cases.  Approximately $42,850.00
v. State, 44 S.W.3d 700, 702 (Tex. App.CHouston [14th Dist.]
2001, no pet.); see also Harris v. Civil Service Comm'n for Mun. Employees
of the City of Houston, 803 S.W.2d 729, 731 (Tex. App.CHouston [14th Dist.] 1990, no writ).  Therefore, we overrule this issue.  

2.  Directed
Verdict in Favor of the Corporation

Appellant
filed suit against the Corporation based upon a theory of respondeat
superior.  The Corporation moved for a
directed verdict on the grounds that it could not be vicariously liable for the
officers=
actions because: (1) Bryson and the other officers were acting as on-duty
officers during the incident with appellant and (2) the officers were
independent contractors.  

a.  AOn-Duty@
Police Officers








Under
the doctrine of respondeat superior, an employer may be vicariously liable for
the tortious acts of an employee.  St.
Joseph Hosp. v. Wolff, 94 S.W.3d 513, 541B42 (Tex. 2002) (quoting Baptist
Mem=l Hosp. Sys. v. Sampson, 969 S.W.2d 945, 947 (Tex. 1998));
Mansfield v. C.F. Bent Tree Apartment Ltd. P=ship, 37 S.W.3d 145, 149 (Tex. App.CAustin 2001, no pet.). 
When determining the status of an off-duty officer we ask Ain
what capacity was the officer acting at the time he committed the acts for
which the complaint is made?@ 
Blackwell v. Harris County, 909 S.W.2d 135, 139 (Tex. App.CHouston [14th Dist.] 1995, writ denied).  If a peace officer is performing a public
duty, such as enforcement of general laws, he is acting in the course and scope
of his employment as a police officer and the private employer is not vicariously
liable for the officer=s actions, even if the employer may
have directed those activities.  Mansfield,
37 S.W.3d at 150; Larkin v. Johnson, 44 S.W.3d 188, 189B90
(Tex. App.CHouston [14th Dist.] 2001, pet. denied); Bridges v.
Robinson, 20 S.W.3d 104, 111 (Tex. App.CHouston [14th Dist.]
2000, no pet.), disapproved of on other grounds, Telthorster v.
Tennell, 92 S.W.3d 457, 464 (Tex. 2002); see also Blackwell, 909
S.W.2d at 139.  If an off-duty officer
observes a crime, as a matter of law he becomes an on-duty officer.  Mansfield, 37 S.W.3d at 150; City
of Dallas v. Half Price Books, Records, Magazines, Inc., 883 S.W.2d 374,
377 (Tex. App.CDallas 1994, no writ). 

The
evidence adduced at trial, examined in the light most favorable to appellant,
established that on the day in question the officers had been assigned to
enforce temporary no-parking signs by their supervising officer and were
ticketing cars in the areas surrounding the festival.  The officers wore their police uniforms and
used equipment issued to them by the City. 
Significantly, appellant testified that he recognized these individuals
as police officers.  








Appellant=s
vehicle was parked below a temporary no-parking sign.  Appellant was told to move the vehicle and,
after receiving a parking citation, appellant spun his tires, moving the car in
a reckless manner.[3]  In doing so, appellant violated a city
ordinance, and the officers witnessed the violation.  Bryson and the other officers testified that
it is their duty, whether on duty or off, to act whenever they see a crime or
offense being committed; likewise, it is their duty to uphold any city, state,
or federal laws.  Bryson saw appellant=s
car illegally parked and saw appellant violate a city ordinance by spinning his
vehicle=s
tires.  From the point of making those
observations, Bryson and the other officers were acting as on-duty police
officers as a matter of law.  See City
of Dallas, 883 S.W.2d at 377.  Also,
when Bryson accompanied appellant into his home, Bryson did so as a police
officer. 

Further,
the officers stated they did not meet with festival officials, were not
contacted by them, and were unable to take orders from festival officials, as
they were allowed only to take orders from their supervising officer.[4]  John Florez, the presiding officer of the
festival, testified that the Corporation neither contacted the officers nor
gave them orders: 

Q.  Mr. Florez, how
did you go about hiring the off-duty police officers? Explain that process.

A.  There is a B the City has a department within HPD called special
operations. I really do nothing except pay the officers. I mean everything is
handled by them. They meet, they decide, they pick, they instruct and we simply
pay the officers.

He
stated further that the Corporation did not provide equipment to the officers
and did not have any control over their duties.   

Considering
all of the evidence, we find that the officers involved were acting as on-duty
police officers, enforcing the general laws, at all times during their encounter
with appellant.  Although it is true that
the evidence at trial established the officers were paid by the Corporation,
imposing liability on an employer requires more.  See Wolff, 94 S.W.3d at 541B42
(noting that a number of factors, particularly that of control, affect whether
and when vicarious liability is appropriate). 
There was no probative evidence raising a fact issue regarding the
Corporation=s vicarious liability for the acts
of the officers.  We find the trial court
correctly directed a verdict in the Corporation=s favor on this issue.








b.  Enforcing Public Laws

Appellant
argues the directed verdict was in error because a fact issue existed
concerning whether Bryson was enforcing a public law.  In making this argument, appellant apparently[5]
reasons that because the no-parking signs were unauthorized by the city
engineer, the officers were not enforcing a Apublic law.@  However, under the facts of this case, we
find this contention to be without merit. 


Initially,
we note appellant fails to offer any authority for the proposition that an Aunauthorized@
sign is unenforceable, and an officer=s subsequent enforcement actions are
also Aunauthorized.@  See Tex.
R. App. P. 38.1(h).  Nevertheless,
it is undisputed that the City did in fact post the temporary no-parking signs
at issue.  Appellant stipulated to this
at trial and indeed, developed testimony that city workers placed the signs on
appellant=s street in the Acourse
and scope@ of their employment with the
City.  We find this sufficiently
establishes that the officers were acting to enforce a public law for the
purposes of our analysis.  It would be unreasonable
to conclude that because the signs may have been Aunauthorized@
(as opposed to illegal, which we do not address here), the officers=
actions pursuant to enforcing those signs were consequently invalid.  Bryson and the other officers acted in good
faith reliance on the validity of the posted no-parking signs and enforced a Apublic
law.@  








Moreover,
even assuming for the sake of argument that the no-parking signs were not Apublic
laws@
because they were not properly authorized, that fact is not material here
because Bryson and the other officers also witnessed appellant violating
another city ordinance when he spun his vehicle=s tires.  Appellant does not contend that this latter
ordinance was not a public law.[6]

Finally,
appellant argues that Bridges v. Robinson, 20 S.W.3d 104 (Tex. App.CHouston [14th Dist.] 2000, no pet.), is factually similar to the case at
bar and requires that the issue of whether the officers were enforcing rules
promulgated by the festival or by the City should have been submitted to the
jury.  We disagree.  








Bridges is
inapposite to the issue addressed here, as the facts most salient regarding a
directed verdict in favor of the Corporation differ significantly from those in
Bridges.  In  that case, a Dillard=s
customer became embroiled in a struggle with two on-duty salaried security
officers who were also Harris County sheriff=s deputies.  20 S.W.3d at 108.  Tragically, the customer died as a result of
injuries sustained during the confrontation with the peace officers.  Id. at 110.  Here, the officers involved in the
confrontation were not Asalaried security officers@
working to protect the property of the private employer or the employer=s
rules, as they were in Bridges.  Id.
at 108.  Indeed, the Bridges court
noted that there was Aample evidence that the [officers]
were working private, off duty, security jobs.@ 
Id. at 111.  Instead, here
there is ample evidence that the officers, although paid by the Corporation,
were at all times acting to enforce public laws.  Further, the Bridges court noted that
if a police officer is Aengaged in the protection of the
employer=s
property, ejecting trespassers or enforcing rules and regulations promulgated
by the employer,@ it then becomes a jury question as
to whether he was acting as a public officer or as an agent of the private
employer.  Id. (quoting Blackwell,
909 S.W.2d at 139).  Here, the officers
were enforcing no-parking signs placed by the City, in their capacity as police
officers.  The officers were citing
appellant for a violation of a city ordinance, they were not enforcing rules promulgated
by the Corporation.[7]  The confrontation in Bridges occurred
on the store=s premises while the officers were
acting as paid Dillard=s employees, enforcing the private
employer=s
rules and protecting its property. 
Contrarily, here the confrontation began on a public street when
appellant received a parking citation. 
Although appellant was injured in his home that does not change the
character of the officers= functions, they were still
enforcing public laws.  Comparing Bridges
to the instant case, the only factual similarity is that a private citizen was
involved in a physical struggle with peace officers.  

c.  The Officers as Independent Contractors

In
the trial court, the Corporation also argued it could not be held liable for
the actions of the officers because they were independent contractors.  Appellant argues that a fact issue existed
concerning the Corporation=s ability to control the off-duty
officers.  Specifically, appellant argues
that because Florez testified the Corporation could control the officers
through the off-duty police supervisors, the jury could have inferred that by
giving orders through the supervisors, the Corporation could have prevented the
officers from injuring appellant.[8]  Again, we find appellant=s
contentions without merit.








An
independent contractor is Aone >who, in the pursuit of an
independent business, undertakes to do a specific piece of work for other
persons, using his own means and methods, without submitting himself to their
control in respect to all its details.=@  Duran v. Furr=s
Supermarkets, Inc.,
921 S.W.2d 778, 786 (Tex.
App.CEl Paso 1996, writ denied) (quoting Pitchfork Land &
Cattle Co. v. King, 346 S.W.2d 598, 602B03 (Tex. 1961)).  In determining whether one is acting as an
employee or as an independent contractor, a court is required to examine
several factors, including: (1) the independent nature of the contractor=s
business; (2) his obligation to supply necessary tools, supplies, and
materials; (3) his right to control the progress of the work except as to final
results; (4) the time for which he is employed; and (5) the method by which he
is paid, whether by the time or by the job. 
Duran v. Furr=s Supermarkets, Inc., 921 S.W.2d 778, 786 (Tex. App.CEl Paso 1996, writ denied). 
The most important factor in the analysis is the right of control.  Id. 
A Apossibility@
of control is not evidence of a right to control.  Coastal Marine Serv. of Texas, Inc. v. Lawrence, 988 S.W.2d 223, 226 (Tex. 1999). 









In
this case, there was ample evidence the Corporation did not have the right to
control the officers and that the officers acted as independent
contractors.  The officers received their
assignment from a supervising officer rather than the Corporation.  Indeed, the Corporation did not deal directly
with the officers at all.  Florez
testified: AI don=t instruct them what to do, what not
to do, what to wear, when to be there. 
That is determined to the letter by special operations.@[9] 
Florez stated further that he did not supervise the officers, was not
involved in their hiring, did not speak to them regarding their duties and did
not supply any uniforms or equipment.  He
also testified that he was unaware of the incident with appellant until
receiving a letter from appellant=s trial counsel.  The officers testified that, had anyone from
the festival instructed them to not ticket a car or otherwise conduct their
police activities, they would be unable to take orders from the Corporation.  Further, the officers ticketed the cars under
their authority as Houston police officers, using city equipment and wearing
police uniforms.  See Hoechst Celanese
Corp. v. Compton, 899 S.W.2d 215, 221 (Tex. App.CHouston [14th Dist.]
1994, writ denied) (finding off-duty officers hired by a private corporation to
be independent contractors because, in part, they furnished their own
equipment).  Police work of this type is,
by its nature, an independent business. 
The officers, not the festival, were conducting police work in
controlling the parking situation.  See
id. (finding off-duty officers hired by private corporation to conduct
traffic were independent contractors, in part, due to the nature of the work). 

As
further evidence the officers were independent contractors and outside of the
Corporation=s control, the officers were paid on
an hourly basis, with cash, and were responsible for paying their own taxes on
the money earned.  See Bennack Flying
Serv., Inc. v. Balboa, 997 S.W.2d 748, 752B53 (Tex. App.CCorpus Christi 1999, pet. dism=d w.o.j.) (noting that payment of taxes or social
security was some evidence of employment relationship).  Based upon this evidence, the officers were
acting as independent contractors, enforcing the law and as such, the
Corporation is not liable for their acts.[10]
 








In
sum, there was no evidence raising a fact issue on either of the grounds
asserted and a directed verdict in favor of the Corporation was proper.  We overrule appellant=s
issues regarding the Corporation.

3.  Directed Verdict in Favor of the City

Appellant
filed suit against the City under the Texas Torts Claim Act (hereinafter the AAct@)
for the negligent use of handcuffs and its negligent placement of the
no-parking signs.  At trial, the City
moved for a directed verdict on the ground that there was no evidence that
placement of the signs was the proximate cause of appellant=s
injury and there was no evidence of negligence in Bryson=s
use of the handcuffs.  Appellant argues
that the trial court erred in granting a directed verdict in favor of the City Aon
the issues relating to the placement of signs@ because fact questions existed as
to proximate cause.[11]  








In
Texas, a governmental unit such as the City is immune from tort liability
absent a legislative waiver.  See
Dallas County Mental Health & Mental Retardation v. Bossley, 968 S.W.2d
339, 341 (Tex. 1998); see also Tex. Workers=
Comp. Comm=n v. City of Eagle Pass, 14 S.W.3d 801, 804 (Tex. App.CAustin 2000, pet. denied). 
Relative to this case, under the Act a governmental unit is liable for
personal injury caused by a condition or use of tangible personal property if
the governmental unit would, were it a private person, be liable to the
claimant according to law.  Tex. Civ. Prac. & Rem. Code '
101.021(2).  Under this provision of the
Act, for immunity to be waived, the injury must be proximately caused by the
condition or use of tangible property.[12]
 Bossley, 968 S.W.2d at 343.  The requirement of proximate causation is
more than mere involvement of the property. 
Id.  There must be a Adirect
and immediate relationship between the injury and the use of the property.@  Univ. of Tex. Med. Branch Hosp. v. Hardy,
2 S.W.3d 607, 609 (Tex.
App.CHouston [14th Dist.] 1999, pet. denied). 

Appellant
argues that the conflict between himself and the officers was a Aforeseeable
result@
of the negligent placement of the temporary no-parking signs.  As support for his assertion, appellant cites
to Bryson=s testimony stating that he had
dealt with people irritated by receipt of a parking ticket.  Following appellant=s
reasoning of causation then, by placing the no-parking signs around the
festival area the City caused the police to ticket vehicles, which caused
appellant to become upset, thus causing him to confront the police officers,
resulting in his injury.[13]  We find this sequence of events is too
attenuated to conclude that placement of the signs caused appellant=s
injury.  There is no direct and immediate
relationship between appellant=s injury and placement of the
signs.  See Bossley, 968 S.W.2d at
343.  Although placement of the signs
caused appellant to receive a parking ticket, it did not cause his wrist
injury.  Id.  (AProperty does not cause injury if it
does no more than furnish the condition that makes the injury possible.@).  The trial court did not err in granting a
directed verdict in favor of the City and we overrule appellant=s
issue. 

                            4. 
Directed Verdict in Favor of Bryson








Finally,
we address appellant=s issue regarding the directed
verdict in favor of Officer Bryson.  At
trial, Bryson argued for a directed verdict on the grounds of qualified
immunity and that there was no evidence he ever assaulted appellant.  Appellant argues the trial court erred in granting
the directed verdict because Bryson failed to conclusively establish he was
entitled to official immunity, claiming Bryson did not present sufficient
evidence that he was a governmental employee and acted in good faith.[14]  

Official
immunity is an affirmative defense that protects governmental employees from
personal liability.  Telthorster v. Tennell, 92 S.W.3d 457, 460 (Tex. 2002) AA governmental employee is entitled
to official immunity for (1) the performance of discretionary duties (2) that
are within the scope of the employee=s authority, (3) provided that the
employee acts in good faith.@ 
Id. at 461.[15]  

Regarding
appellant=s assertion that Bryson failed to
establish he was a governmental employee, given our previous conclusion that
Bryson was acting as an on-duty officer during the incident in question,[16]
we find appellant=s assertion on this point without
merit and address only his argument concerning evidence of good faith.[17]  








Appellant
argues there is insufficient evidence of good faith because Bryson presented
only conclusory evidence that the officers believed he was acting in good faith
and Bryson did not address the factors set forth in City of Lancaster v.
Chambers, 883 S.W.2d 650, 656 (Tex. 1994). 
In Chambers, a high-speed pursuit case, the
court set forth a need/risk analysis to be used in determining the element of
good faith.  See Chambers, 883
S.W.2d at 656B57. 
However, in cases involving personal injury during an arrest, a
particularized need/risk assessment is not necessary.  Telthorster v. Tennell, 92 S.W.3d 457,
464 (Tex. 2002).  Instead, in these latter cases, an officer
must show that a reasonably prudent officer, under the same or similar
circumstances, could have believed that his conduct was justified based on the
information he possessed when the conduct occurred.  Id. at 465.  The good faith inquiry is not Awhat
a reasonable person would have done,@ but Awhat a reasonable officer could
have believed.@ 
Id.  If the officer meets
this burden, the claimant must offer evidence that no reasonable officer in
that position could have believed that the facts were such that they justified
his conduct.[18]  Id. 


Considering
that official immunity is an affirmative defense, Bryson had the burden to
prove each element, including that he acted in good faith.  See Rivas v. City of Houston, 17
S.W.3d 23, 28 (Tex. App.CHouston [14th Dist.] 2000, no pet.).  However, Bryson was not required to prove
that it would have been unreasonable not to engage in the conduct at issue, or
that all reasonably prudent officers would have engaged in the same conduct.  See Telthorster, 92 S.W.3d at
465.  Bryson was required to prove only
that a reasonably prudent officer, under similar circumstances, might have
reached the same decision.  Id.  If officers of reasonable competence could
disagree on the issue, the officer will be said to have acted in good faith as
a matter of law.  Id.  

At
trial, Bryson testified that during the incident he was performing Anormal
police officer duties@ and was acting in accordance with
his police training.  He further
testified that appellant was belligerent and Avery upset.@  Another officer described appellant as Avery
emotional@ and loud.  Sergeant Bailey, the supervising officer on
the scene, described appellant as Ahighly ticked off@
and acting Aextremely@
unreasonably.  He and another officer
also stated appellant was yelling and hollering.  Also, each officer testified that when
appellant moved his car into his driveway, he did so in a reckless manner.[19]








Further,
Bryson testified that when appellant entered his home to retrieve his license,
Bryson accompanied him C along with another officer C
for safety purposes, due in part to appellant=s belligerence.  Sergeant Bailey acknowledged that this was an
appropriate action and stated it was Astandard procedure@
for an officer to Astand near@
a suspect while he was being detained. 
Importantly, both Bailey and another officer on the scene that day
stated Bryson=s actions during the incident were
lawful and that another reasonably prudent officer might have acted in the same
manner had they been in Bryson=s position.  Based on this evidence, Bryson established
that he acted in good faith.  See
Rivas, 17 S.W.3d at 27B28. 
Contrarily, appellant did not present evidence establishing that no
reasonable officer in that position could have believed the facts were such
that they justified his conduct. 
Accordingly, we overrule appellant=s issue concerning Officer Bryson.

III. 
Conclusion

In
sum, we find the trial court did not err in granting a directed verdict in
favor of appellees.  Appellant=s
issues are overruled and the judgment of the trial court is affirmed.  

 

 

 

 

/s/        Eva
M. Guzman

Justice

 

 

Judgment rendered and Opinion filed
August 28, 2003.

Panel consists of Justices Anderson,
Seymore, and Guzman.

 

 











[1]  There was no
testimony establishing at what moment, during the course of the incident,
appellant=s wrist injury occurred.  Appellant=s doctor
testified that, based on the history provided by appellant, the injury occurred
Awhile he was being arrested.@  Appellant
testified that after falling he awoke and realized he was hurt.  





[2]  Appellant
attached a copy of the transcript of his criminal trial to his appellate
brief.  However, in our review, we cannot
consider documents attached as appendices to briefs and must consider a case
based upon the record filed.  Brown v.
McGonagill, 940 S.W.2d 178, 179 (Tex. App.CSan
Antonio 1996, no writ); Mitchison v. Houston Ind. Sch. Dist., 803 S.W.2d
769, 771 (Tex. App.CHouston [14th Dist.] 1991, writ denied).

 





[3]  Appellant
testified that his tires were spinning because the gas pedal had a Astrong spring@ and he
was barefoot and unused to the gas pedal under those circumstances.  Specifically, appellant stated, A[a]nd when the metal move I couldn=t control anymore the gas, my wheels spin, you
know.  Scare me and I was surprised of
that because I was not expecting that.@   





[4]  Part of the
permit process, required to conduct the festival, involves hiring off-duty
police officers. Once the permit is filed, a festival representative is
contacted by someone in the special operations department and arrangements are
made regarding the number of officers required to work the festival.   





[5]  Although we
cannot discern from appellant=s brief the specific argument advanced by appellant
regarding this issue, we nevertheless attempt to address what we believe his
argument to be.





[6]  Appellant did not actually receive a citation for
violating the ordinance because his confrontation with the officers immediately
followed; appellant was instead arrested for assault.  Although appellant mentions that Bryson was
not the ticketing officer, he fails to state why this would be material given
the facts of this case.  Testimony
established that Bryson and the other officers worked together, as a group,
ticketing cars.  They rode together and
all were under the supervision of Sergeant Mark Bailey.  Bryson testified that he accompanied
appellant into his home to retrieve the license, along with the ticketing
officer, for safety purposes and, according to appellant, that is when the
injury occurred.  There is nothing in the
record to indicate that appellant=s arrest was not part of a continuous sequence of events,
beginning with the parking citation and ending with his arrest.  It is of no consequence that Bryson was not
the ticketing officer.  





[7]  Appellant
implies that because the no-parking signs were placed on his street due to the
festival, the no-parking signs were somehow rules promulgated by the
Corporation.  We reject this
implication.  As discussed, there was
direct testimony the no-parking signs were placed there by City employees in
the course and scope of their employment. 
There was also testimony that the Corporation did not in fact want the
no-parking signs in the area because it prevented patrons from parking close to
the festival.  Moreover, as discussed
later in this opinion, we reject any assertion that the festival may be liable
based on some attenuated causation. 





[8]  In support of
this assertion, appellant cites to Coastal Marine Serv. of Tex., Inc. v.
Lawrence, 988 S.W.2d 223 (Tex. 1999). 
In Coastal, an independent contractor=s employee died as a result of an accident involving a
crane owned by Coastal but operated by the independent contractor.  Id. at 224.  The issue in that case was Awhether an independent contractor=s willingness to follow a premises owner=s instructions, though no such instructions were
given, [was] legally sufficient evidence of the premises owner=s >right to control= in a
premises liability case.@  Id. at
224.  The court found it was not, concluding
Aa possibility of control@ was not
evidence of a right to control.  Id.
at 224B26. 





[9]  Appellant
states in his brief that Florez testified the Corporation could Acontrol@ the
officers through off-duty police supervisors, however he fails to provide
record citations for that testimony.  Our
independent search of the record does not reveal any testimony sufficient to
establish the requisite level of control necessary for the imposition of
liability on the Corporation.  See St.
Joseph Hosp. v. Wolff, 94 S.W.3d 513, 541B42 (Tex.
2003) (finding that the most important issue in imposing liability within an
employment context is control).  Although
some of the testimony may, at best, exhibit a possibility of control, as
noted, this is not evidence of a right of control.  Coastal Marine, 988 S.W.2d at
226.  





[10]  Although in
listing his issues, appellant states that a fact issue existed Aabout whether [the Corporation] could be held liable
for the officers= action even if they were independent contractors@ because of the Corporation=s ability to control the officers,  appellant did not argue that particular point
of law in his brief.  Regardless, having
found that the Corporation did not have any control over the officers,
it is unnecessary to address the issue of any liability for the officers= actions as independent contractors.





[11]  Appellant does
not argue that a fact issue was raised regarding Bryson=s use of the handcuffs. 






[12]  For Ause@ of
tangible personal property to occur, the property must be put or brought into
service or action, or employed for or applied to a given purpose.  Kerrville State Hosp. v. Clark, 923
S.W.2d 582, 584 (Tex. 1996); Univ. of Tex. Med. Branch Hosp. v. Hardy, 2
S.W.3d 607, 609 (Tex. App.CHouston [14th Dist.]
1999, pet. denied).  Assuming without
deciding that appellant has sufficiently established that the City=s Ause@ of the no-parking signs falls within the parameters of a
waiver of liability under the Act and that the City did in fact negligently
place the signs on appellant=s street, we address the causation issue.  





[13]  In support of
his assertions, appellant cites to Bagg v. Univ. of Tex. Med. Branch,
726 S.W.2d 582 (Tex. App.CHouston [14th Dist.] 1987, writ ref=d n.r.e.), which stands for the proposition that a
person can still be sued in his individual capacity for a wrongful unofficial
act.  We fail to see the application of
this case to appellant=s arguments regarding causation.





[14]  Appellant does
not present any argument in his brief regarding an alleged assault. 





[15]  We note also
that if a governmental employee is not liable based upon official immunity, the
governmental employer is similarly not liable. 
See DeWitt v. Harris County, 904 S.W.2d 650, 654 (Tex. 1995). 





[16]  In addition,
all parties stipulated at trial that Bryson was a peace officer on the day in
question, licensed by and through the State and commissioned by the City of
Houston.  





[17]  Appellant does
not argue that Bryson was not performing a discretionary act; however, an
arrest is a discretionary act.  See
Half Price Books, 883 S.W.2d at 376.





[18]  Appellant
again cites to Bagg, asserting that this case is similar to Aa sheriff obtaining an unauthorized fee.@  Based upon the
circumstances of this case, we fail to see the analogy.  The applicable law is as set forth
above.  





[19]  Appellant
similarly described his state of mind as Apissed
off@ and also stated he had lost control of his gas pedal
when pulling his car into the driveway. 
Although appellant=s version of the facts differs somewhat from Bryson=s, the differences are not material to the issue here.