Douglas WATSON and Larry
Joe Perry, Appellants,

v.

DALLAS INDEPENDENT SCHOOL
DISTRICT, et al., Appellees.

No. 10–00–00044–CV.

Court of Appeals of Texas,
Waco.

March 24, 2004.

Steven Eugene Clark, Clark & Associates, Hance W. Burrow, Goins, Underkofler, Crawford & Langdon, Dallas, for appellants.

Mark A. Hendrix, Stuart P. Kasiske, Vial, Hamilton, Koch & Knox, L.L.P., Dallas, Dennis Eichelbaum, Schwartz & Eichelbaum, P.C., Plano, for appellees.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.*

## OPINION

FELIPE REYNA, Justice.

Douglas Watson and Larry Joe Perry filed suit against the Dallas Independent School District ("DISD") and others alleging causes of action for intentional pollution, intentional nuisance, fraud, intentional infliction of emotional distress, conspiracy, aggravation of work-related injury, breach of duty of good faith and fair dealing, intentional violation of statutes requiring an employer to maintain a safe workplace, and violation of the whistleblower statutes.

The court granted Appellees' motions for summary judgment. Appellants claim in four points that the court erred by: (1) granting Appellees' summary judgment motions premised on immunity and the exclusivity of remedies provided by the workers' compensation statutes; (2) granting DISD's no-evidence summary judgment motion because Appellants presented sufficient controverting evidence to raise a genuine issue of material fact on each element challenged by DISD's motion; (3) setting aside deemed admissions attributable to Appellees; and (4) denying Appellants' motion for partial summary judgment based on Appellees' deemed admissions.[1]

## FACTUAL BACKGROUND

Appellants both worked for DISD as plumbers during the pertinent time period. DISD purchased a manufacturing facility located in Dallas from Proctor & Gamble Manufacturing Company ("P & G") in August 1994. P & G had previously used this facility to manufacture various household products. After acquiring the property, DISD undertook renovation efforts to con-

---

\* This case was submitted with former Chief Justice Davis on the panel, but he resigned effective August 4, 2003. *See* Tex.R.App. P. 41.1(c). Justice Reyna, who took the oath of office on January 5, 2004, participated in the decision of the court.

1. Appellants' points of error are not well-defined in their brief. Their table of contents refers to 2 points of error. The "Issues Presented" portion of their brief references 4 issues. In the "Argument" section of the brief, Appellants present 2 points of error. "Point of Error No. 1" purports to combine "points one and two." "Point of Error No. 2" purports to combine "points three and four." The appellate rules permit a party to present "issues or points." *See* Tex.R.App. P. 38.1(e). For the sake of clarity, an appellant should employ uniform terminology throughout his brief. We construe Appellants' brief to present 4 points of error as indicated above.

vert the property to use as a maintenance facility.

Appellee Jack Lowrey was the General Maintenance Supervisor for DISD's Environmental Services Division. In February 1995, he assigned Appellants to the P & G site to lay a sprinkler line adjacent to the building. Appellants cut through several existing underground pipelines and tanks while digging the trench for the sprinkler line. As a result, they "began to encounter large amounts of chemicals and industrial waste which got on their clothes and which fumes they inhaled while working in the ditch." They allege that, when they approached their supervisors about the situation, the "supervisors told them to shut up and to keep working."

After Appellants "began to experience respiratory symptoms and other distress," they contacted the Texas Natural Resource Conservation Commission ("TNRCC"). As a result, a TNRCC investigator came to the site on February 10. Appellants contend that, after this investigator left, Appellees Lowrey and Jeffrey Brogden "insinuated" that they had called TNRCC.[2] Lowrey instructed them to let him handle any further concerns they had about toxic substances at the P & G site because DISD could not afford to halt work "every time they dug something up." Lowrey and Brogden told Appellants to resume their work.

TNRCC advised Appellee David Strobel[3] on February 17 that the investigator's inspection and a review of soil samples removed from the site in November 1994 indicated the presence of various contaminants at the site.[4] Appellants encountered other unknown substances as they continued their work. Their supervisors instructed them to finish the job.

On April 5, Appellants contacted a Texas Workers' Compensation Commission ("TWCC") hotline. In response, TWCC asked DISD to provide a written report on the matter. Appellants encountered an underground tank containing an unknown substance on April 13. They contacted Basso who had previously inspected the site on several occasions and asked her to take a sample of this unknown substance for testing. Lowrey advised Appellants through their immediate supervisor that he had instructed Basso not to go to the site. Later on that date, workers cut through a pipeline, causing a liquid to fill the trench which made their eyes water. Lowrey then asked Basso to come to the site and collect specimens.

TNRCC received a letter from Strobel on April 24 advising that DISD would conduct a more-detailed study of possible contaminants at the P & G site. On May 25, Basso advised TNRCC that testing had disclosed the presence of several contaminants at the site.

Lowrey summoned Watson to his office on June 1. Perry accompanied Watson to Lowrey's office. A heated discussion ensued in which Lowrey threatened to fire Watson for insubordination. At some point, Brogden joined the meeting. Lowrey would not allow Watson to leave Low-

2. Jeffrey Brogden was the Field Supervisor for DISD's Environmental Services Division. Lowrey was his immediate supervisor. Brogden was the immediate supervisor of Louie McCullough who was Appellants' immediate supervisor.

3. David Strobel was DISD's Director of Maintenance Services and Lowrey's supervisor.

4. Marisa Basso, a DISD environmental consultant employed by Triad Onsite Systems, Inc., had taken the November 1994 samples and had made written inquiry to TNRCC in December regarding what course of action should be taken with respect to the contaminants discovered.

rey's office until they could "get some things straight" about the TNRCC matter. He threatened to fire Watson if he did leave. Watson refused to discuss the matter without representation. He testified in his deposition that Lowrey fired him at "[a]pproximately 10:00" that morning but reinstated him "at quitting time." Lowrey and Brogden threatened to fire Perry as well that morning.

On July 21, Lowrey placed Appellants on probation for insubordination. Appellee Ellis Hunter reassigned Appellants to a different plumbing division on August 11 because of a "conflict of personalities" with Lowrey.[5] However, Appellants objected to their new assignment because it required them to report at least initially to the P & G site. Hunter testified that they only had to report at the site but would work at other sites.[6]

## PROCEDURAL BACKGROUND

Appellants instituted a grievance proceeding in accordance with DISD policy in early June 1995. The level one grievance hearing was held on June 7. The level two hearing was held in late August/early September. Appellants filed suit on August 31, 1995. A level three grievance hearing was conducted in January 1996. A DISD attorney informed Appellants at the level three hearing that the grievance proceeding would be held "in abeyance" until their lawsuit was resolved.

5. Ellis Hunter was DISD's Director of Maintenance.

6. Appellants had both obtained requests from their physicians that they not be assigned to work at the P & G site.

7. Michael Henderson was DISD's administrator for facilities support.

8. After granting Appellees' summary judgment motions, the court severed Appellants'

Appellants name the following as defendants in their petition: DISD, P & G, Strobel, Lowrey, Brogden, Hunter, Strobel's supervisor Michael Henderson,[7] and DISD Risk Management Specialist Bernard Cousin.[8] Appellants served requests for admissions on all defendants save Strobel on January 10, 1997.[9] Appellants served requests for admissions on Strobel on January 30. Appellants' counsel agreed to extend the due date for Appellees' responses. However, the parties dispute the length of time they agreed to extend the deadline.

A paralegal employed by Appellees' counsel sent a letter to Appellants' counsel on February 20 confirming that Appellants' counsel had agreed to extend the deadline to March 7. Appellants' counsel signed the letter indicating his agreement to the extension. The individual defendants filed their responses on March 14. DISD filed its response on November 13, 1998 as an attachment to Appellees' joint motion to withdraw deemed admissions.

The individual defendants filed summary judgment motions on April 27, 1999.[10] Appellants countered with a motion for partial summary judgment on May 12 premised on Appellees' deemed admissions of liability. Appellants filed a response to the defendants' summary judgment motions on May 28 and requested a continuance in the event the court granted the motion to strike the deemed admissions.

claims against Proctor & Gamble from their claims against Appellees. Proctor & Gamble is not a party to this appeal. Accordingly, we do not address its involvement in this litigation hereinafter.

9. The requests for admission directed to Strobel were apparently lost in the mail.

10. The individual defendants jointly filed separate summary judgment motions against Watson and Perry.

The court heard Appellees' motion to strike the deemed admissions and the summary judgment motions on June 3. At the conclusion of the hearing, the court orally granted Appellees' motion to strike the deemed admissions, denied both sides' summary judgment motions, and denied Appellants' request for a continuance. The court advised the parties that a pretrial hearing would be conducted on July 29.

The individual defendants filed motions for summary judgment against Appellants on June 7 which are substantially similar to their original motions. They contend that they are entitled to judgment as a matter of law because: (1) they are immune from the majority of Appellants' claims: (2) there is no evidence to support the conspiracy and intentional failure to provide a safe workplace claims; (3) Appellants failed to exhaust their administrative remedies before filing their whistleblower claim; (4) individuals cannot be sued for whistleblower violations; and (5) the workers' compensation statutes provide the exclusive remedy for Appellants' work-related injuries.

DISD filed a motion for summary judgment one month later. DISD claims that it is entitled to judgment as a matter of law because: (1) it is immune from Appellants' tort claims (all but the whistleblower claim); (2) because the workers' compensation statutes provide the exclusive remedy for Appellants' work-related injuries; and (3) because there is no evidence to support any of Appellants' claims.

The individual defendants filed a supplemental summary judgment motion thereafter asking the court to grant them summary judgment under section 101.106 of the Texas Tort Claims Act if the court granted DISD's summary judgment motion on Appellants' tort claims.

The court signed an order on August 6 granting DISD's summary judgment motion without specifying the basis for its decision. The court signed an order on August 10 granting the individual defendants' summary judgment motions without specifying the basis for its decision.

## DEEMED ADMISSIONS

Appellants contend in their third point that the court abused its discretion by allowing Appellees to withdraw their deemed admissions. Rule of Civil Procedure 198.3 governs the court's decision to permit the withdrawal of deemed admissions.[11] Rule 198.3 provides:

Any admission made by a party under this rule may be used solely in the pending action and not in any other proceeding. A matter admitted under this rule is conclusively established as to the party making the admission unless the court permits the party to withdraw or amend the admission. The court may permit the party to withdraw or amend the admission if:

(a) the party shows good cause for the withdrawal or amendment; and

(b) the court finds that the parties relying upon the responses and deemed admissions will not be unduly prejudiced and that the presentation of the merits

---

11. The former Rule of Civil Procedure 169 governed requests for admissions when Appellants filed suit, when they served their requests for admissions on Appellees, and when Appellees filed their motion to withdraw the deemed admissions. *See* Tex.R. Civ. P. 169(1), 785–786 S.W.2d (Tex.Cases) lviii-lix (Tex. 1990, repealed 1999); Tex.R. Civ. P. 169(2), 733–734 S.W.2d (Tex.Cases) lvi (Tex.1988, repealed 1999). The Supreme Court repealed Rule 169 effective January 1, 1999 and adopted Rule 198 in its place. *See Final Approval of Revisions to the Texas Rules of Civil Procedure,* 977–978 S.W.2d (Tex.Cases) xxxiii-xxxiv, lxv-lxvi (Tex.1998).

of the action will be subserved by permitting the party to amend or withdraw the admission.

TEX.R. CIV. P. 198.3. Because Rule 198.3 is substantially similar to its predecessor Rule 169(2), we apply the cases construing the former rule. *See Morgan v. Timmers Chevrolet, Inc.*, 1 S.W.3d 803, 807 n. 4 (Tex.App.-Houston [1st Dist.] 1999, pet. denied).[12]

■ A trial court has broad discretion to grant or deny a request to withdraw deemed admissions. *Stelly v. Papania*, 927 S.W.2d 620, 622 (Tex.1996) (citing *Employers Ins. of Wausau v. Halton*, 792 S.W.2d 462, 464 (Tex.App.-Dallas 1990, writ denied)). We will set aside this determination "only if, after reviewing the entire record, it is clear that the trial court abused its discretion." *Id.* Under settled law, a trial court abuses its discretion when it "acts without reference to guiding rules or principles, or acts arbitrarily or unreasonably." *Id.* (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex.1985)).

■ A party seeking to withdraw deemed admissions must first establish "good cause for the withdrawal." TEX.R. CIV. P. 198.3(a). A party does so "by showing that its failure to answer was accidental or the result of a mistake, rather than intentional or the result of conscious indifference." *Stelly*, 927 S.W.2d at

622 (citing *N. River Ins. Co. v. Greene*, 824 S.W.2d 697, 700 (Tex.App.-El Paso 1992, writ denied)); *accord Wal–Mart Stores, Inc. v. Deggs*, 968 S.W.2d 354, 356 (Tex. 1998) (per curiam).

■ If good cause is shown, a court may permit the withdrawal of deemed admissions if it finds that the party relying on the admissions "will not be unduly prejudiced and that the presentation of the merits of the action will be subserved" thereby. TEX.R. CIV. P. 198.3(b). Undue prejudice has generally been found in those instances in which a party waited until the day of trial or after to request the withdrawal of deemed admissions. *See, e.g., Morgan*, 1 S.W.3d at 807; *Texas Employers' Ins. Assn. v. Bragg*, 670 S.W.2d 712, 716 (Tex.App.-Corpus Christi 1984, writ ref'd n.r.e.); *Trevino v. Central Freight Lines, Inc.*, 613 S.W.2d 356, 358–59 (Tex.Civ.App.-Waco 1981, no writ).

At least one court has commented that an offer by the party seeking withdrawal of deemed admissions to pay the opposing party's attorney's fees incurred in responding to the withdrawal request can mitigate any prejudice the opponent might suffer from the withdrawal of the admissions. *See Employers Ins.*, 792 S.W.2d at 467; *cf. United Beef Producers, Inc. v. Lookingbill*, 532 S.W.2d 958, 959 (Tex. 1976) (per curiam) (defendant seeking to set aside default judgment should be re-

---

12. The former rule provided as follows:

**2. Effect of Admission.** Any matter admitted under this rule is conclusively established as to the party making the admission unless the court on motion permits withdrawal or amendment of the admission. Subject to the provisions of Rule 166 governing amendment of a pre-trial order, and Rule 166b–6 governing duty to supplement discovery responses, the court may permit withdrawal or amendment of responses and deemed admissions upon a showing of good cause for such withdrawal or amendment if

the court finds that the parties relying upon the responses and deemed admissions will not be unduly prejudiced and that the presentation of the merits of the action will be subserved thereby. Any admission made by a party under this rule is for the purpose of the pending action only and neither constitutes an admission by him for any other purpose nor may be used against him in any other proceeding.

TEX.R. CIV. P. 169(2), 733–734 S.W.2d (Tex. Cases) lvi (Tex.1988, repealed 1999).

quired to reimburse plaintiff for costs of suit).[13]

The record in this case reflects that Appellants served virtually identical requests for admissions on each of the Appellees. After more than thirty days had passed, counsel for Appellees asked for additional time to respond to the requests. The attorneys agreed to an extension, but the parties now dispute the terms of this agreement. A paralegal employed by Appellees' counsel faxed a letter to Appellants' counsel memorializing the agreement. According to this letter, the parties agreed that Appellees' responses would be due on March 7. Appellants' counsel signed this letter indicating his agreement and returned a copy to Appellees' counsel.

All the Appellees except DISD filed their responses to the requests for admissions on March 14. Neither side made further reference to the apparently untimely responses until Appellants' counsel mentioned the issue during settlement discussions in July 1998. Between March 1997 when the individual defendants served their responses on Appellants' counsel and July 1998 when Appellants' counsel mentioned that these responses were late and DISD had wholly failed to respond, DISD retained new counsel. In addition, the particular attorney who had represented Appellees in March 1997 left the law firm during this time period and her supervisor took up the case.

After being advised of this issue, DISD's present counsel contacted the former attorney, reviewed the files, and began preparing a motion to withdraw the deemed admissions supported in part by DISD's

responses to the requests for admissions. Appellees filed their joint motion to withdraw the deemed admissions in November 1998, four months after Appellants called the issue to their attention. Appellees supported this motion with a copy of the letter memorializing the extension agreement and affidavits from the attorney who represented Appellants in March 1997 when the agreement was reached, her supervisor who took over the individual Appellees' case when she left, and DISD's present counsel.

Appellees' former counsel states in her affidavit that she believes that the parties had agreed to extend the deadline to March 17 and that this date was significant to her because it meant that the responses would not be due until the Monday after spring break. She instructed her paralegal to prepare a letter confirming the parties' agreement. She states that her failure to serve a response on behalf of DISD was unintentional. She notes that the extension agreement involved responses to twenty-one separate discovery documents and that she believed she had responded to all twenty-one. The information that she had failed to serve a response on behalf of DISD "was a complete surprise."

The supervising attorney who took over the case in 1998 states in his affidavit that the "lengthy discovery" initiated by both parties and in which he had participated after March 1997 led him to believe that all prior discovery had been timely filed.

DISD's present counsel describes in her affidavit the steps she took after Appellants' counsel advised her of DISD's failure to respond to the requests for ad-

---

**13.** The Supreme Court has modified *United Beef Producers* to some degree by noting in later decisions that a reimbursement offer "should not be the *sine qua non* of granting the motion [for new trial]. Involved is an equitable principle, and the court should deal with the facts on a case-by-case basis in order to do equity. Failure to offer reimbursement should not in every instance preclude the granting of a new trial." *Angelo v. Champion Restaurant Equip. Co.,* 713 S.W.2d 96, 98 (Tex.1986).

mission. After she reviewed the file, consulted with DISD's former counsel, and verified that DISD had never responded to the discovery requests, her office "immediately began working on the [motion to withdraw the deemed admissions]."

Appellants' counsel countered with his own affidavit that the parties' original agreement was to extend the time for the Appellees' discovery responses to March 7, not March 17. He attached a copy of his calendar for March 1997 which contains a handwritten notation on March 7 indicating that discovery responses were due on that date in the Watson case. He also attached a copy of a letter he mailed to his clients on February 21 informing them that he had agreed to extend the Appellees' deadline to March 7.

At the hearing on Appellees' motion to withdraw the deemed admissions, Appellees noted that good cause for the withdrawal was shown because of counsel's good faith belief that the parties had agreed to extend the deadline to March 17, because of counsel's inadvertent failure to include DISD's response in those she served on Appellants' counsel on March 14, and because Appellants' counsel did not call this issue to the attention of Appellees' counsel until more than a year after the responses were deemed admitted. They argued that Appellants would not be unduly prejudiced by a withdrawal of the deemed admissions because: (1) the case was not yet set for trial; (2) Appellants had been in possession of the individual

Appellees' responses for more than two years; (3) they had been in possession of DISD's responses for more than six months; and (4) many of the requests which were deemed admitted were improper because they asked for admissions on questions of law rather than questions of fact.

Appellants responded that the paralegal's letter conclusively disproves Appellees' supposed good-faith belief that the parties had agreed to extend the deadline to March 17 and that DISD's four-month delay in filing its motion to withdraw and the untimely discovery responses after learning of the problem vitiated any good cause they may have shown. Appellants argued that they would be unduly prejudiced by a withdrawal of the deemed admissions because they had based their discovery and trial preparation strategy during that two-year period in "large part" on the deemed admissions.[14]

■ Appellees' counsel states that she believed the parties had agreed to extend the deadline to March 17. She apparently never reviewed the confirmation letter drafted by her paralegal. While the letter and other documentary evidence proffered by Appellants suggest that the parties had agreed to a March 7 deadline, we cannot say from the evidence presented that the court abused its discretion in determining that the individual Appellees had shown good cause for a withdrawal of their deemed admissions.[15] *See In re A.M.G.,* 5

---

**14.** Appellants also note that they were unduly prejudiced because the court denied their continuance motion after withdrawing the deemed admissions. They had requested a continuance of the hearing on the individual Appellees' initial motions for summary judgment in the event that the court granted Appellees' motion to withdraw the deemed admissions to enable them to conduct additional discovery to respond further to the summary

judgment motions. Rather than granting a continuance however, the court denied the summary judgment motions, thereby rendering Appellants' continuance request moot. Appellants did not request a continuance in response to the individual Appellees' subsequent summary judgment motions or DISD's sole motion for summary judgment.

**15.** If the parties agreed to a March 17 extension as Appellees contend, then the individual

S.W.3d 836, 839 (Tex.App.-San Antonio 1999, no pet.); *N. River Ins. Co.*, 824 S.W.2d at 700–01; *Fibreboard Corp. v. Pool*, 813 S.W.2d 658, 683 (Tex.App.-Texarkana 1991, writ denied).

The fact that Appellees' counsel was juggling twenty-one discovery requests aimed at seven different clients supports a finding of good cause for counsel's failure to prepare a response on behalf of DISD. *See Fibreboard Corp.*, 813 S.W.2d at 683. Conversely, the four-month delay between the time Appellants' counsel advised DISD's counsel that no response had been made and the time DISD filed its responses tends to vitiate any good cause shown. *See Darr v. Altman*, 20 S.W.3d 802, 808 (Tex.App.-Houston [14th Dist.] 2000, no pet.). However, this delay must be tempered by the explanation proffered by DISD's counsel for the delay. When these competing considerations are viewed in light of the broad discretion vested in a trial court to determine whether deemed admissions should be withdrawn, we cannot say that the court abused its discretion by determining that DISD had shown good cause for the withdrawal of the deemed admissions.

Because the responses of the individual Appellees were in Appellants' possession for all but ten days of the more than two years between the date Appellants contend they were due and the date of the hearing on Appellees' motion to withdraw the deemed admissions, we cannot say the court abused its discretion in determining that Appellants would not be unduly prejudiced by the withdrawal of the deemed admissions attributed to the individual Appellees and that the merits of the case would be subserved thereby. *See A.M.G.*, 5

S.W.3d at 839; *Fibreboard*, 813 S.W.2d at 682–83; *Employers Ins.*, 792 S.W.2d at 467.

DISD contends that Appellants were not unduly prejudiced by the withdrawal of its deemed admissions because DISD's responses to Appellants' requests for admissions are substantially similar to those of the individual Appellees. Appellants do not dispute DISD's assertion that its responses are similar. Because Appellants had been in possession of the individual Appellees' responses for more than two years and of DISD's responses for more than six months at the time of the hearing and because they had almost two months to prepare before the next pre-trial setting, we cannot say the court abused its discretion in determining that Appellants would not be unduly prejudiced by the withdrawal of DISD's deemed admissions and that the merits of the case would be subserved thereby. *Id.*

Accordingly, we overrule Appellants' third point.

## DISD'S SUMMARY JUDGMENT

Appellants argue in their first point that the court erred by granting DISD's summary judgment motion because DISD failed to establish its entitlement to judgment as a matter of law on the issues of sovereign immunity and the exclusivity of remedies provided by the workers' compensation statutes.[16] They contend in their second point that the court erred by granting DISD's no-evidence summary judgment motion because they presented sufficient controverting evidence to raise a genuine issue of material fact on each element challenged by the motion.

---

Appellees' responses were timely and were not deemed to have been admitted. *See* Tex.R. Civ. P. 169(1), 785–786 S.W.2d lviii-lix (Tex.Cases) (Tex.1990, repealed 1999).

**16.** Appellants' first point also challenges the summary judgment granted in favor of the individual Appellees. We will address this portion of Appellants' first point separately.

## STANDARDS OF REVIEW

To prevail on a summary judgment motion, the movant must demonstrate that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *See American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997); *Nixon v. Mr. Prop. Management Co.*, 690 S.W.2d 546, 548 (Tex.1985); *Fletcher v. Edwards*, 26 S.W.3d 66, 73 (Tex.App.-Waco 2000, pet. denied). We disregard all conflicts in the evidence and accept the evidence favoring the nonmovant as true. *See Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965); *Fletcher*, 26 S.W.3d at 73. We indulge every reasonable inference from the evidence in favor of the nonmovant and resolve any doubts in its favor. *See American Tobacco*, 951 S.W.2d at 425; *Fletcher*, 26 S.W.3d at 73.

A trial court cannot grant summary judgment on a ground not expressly presented in the summary judgment motion. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex.1996); *Fletcher*, 26 S.W.3d at 74. "When the trial court does not specify the basis for its summary judgment, the appealing party must show it is error to base it on any ground asserted in the motion." *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex.1995); *Fletcher*, 26 S.W.3d at 74. We consider only those grounds "the movant actually presented to the trial court" in the motion. *Cincinnati Life Ins.*, 927 S.W.2d at 625; *Fletcher*, 26 S.W.3d at 74.

We apply the same standard in reviewing a no-evidence summary judgment as we would in reviewing a directed verdict. *See Robinson v. Warner–Lambert*, 998 S.W.2d 407, 410 (Tex.App.-Waco 1999, no pet.); *Moore v. K Mart*, 981 S.W.2d 266, 269 (Tex.App.-San Antonio 1998, pet. denied). We review the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences. *See Morgan v. Anthony*, 27 S.W.3d 928, 929 (Tex.2000); *Robinson*, 998 S.W.2d at 410; *Moore*, 981 S.W.2d at 269. A no-evidence summary judgment will be defeated if the non-movant produces more than a scintilla of probative evidence to raise a genuine issue of material fact on the elements challenged by the movant. *Id.*

## SOVEREIGN IMMUNITY

Sovereign immunity has two components: immunity from suit and immunity from liability. *See Wichita Falls St. Hosp. v. Taylor*, 106 S.W.3d 692, 696 (Tex.2003). Immunity from suit protects government entities and officials from suit. *See Tex. Dept. of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex.1999). Immunity from liability protects government agencies and officials from judgment even if immunity from suit has been waived. *Id.* Immunity from suit can be waived only by statute or legislative resolution. *See Wichita Falls St. Hosp.*, 106 S.W.3d at 696.

A statute will constitute a legislative waiver of immunity from suit only if it does so by "clear and unambiguous" language. *Id.* A statute satisfies this test if it expressly states that immunity is waived or if the statute would be meaningless if immunity was not waived thereby. *See Wichita Falls St. Hosp.*, 106 S.W.3d at 697; *Kerrville State Hosp. v. Fernandez*, 28 S.W.3d 1, 3, 5–6 (Tex.2000); *City of LaPorte v. Barfield*, 898 S.W.2d 288, 291–92, 296–97 (Tex.1995).

The Texas Tort Claims Act expressly waives the immunity of governmental units for injury or death caused by certain premises defects and for "property damage, personal injury, or death aris[ing] from the operation or use of a motor-

driven vehicle or motor-driven equipment." TEX. CIV. PRAC. & REM.CODE ANN. § 101.021 (Vernon 1997). The Tort Claims Act preserves the common-law immunity of school districts and junior college districts "[e]xcept as to motor vehicles." *Id.* § 101.051 (Vernon 1997); *Williams v. Conroe Indep. Sch. Dist.*, 809 S.W.2d 954, 957 (Tex.App.-Beaumont 1991, no writ). It does not waive immunity for intentional torts. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.057(2) (Vernon 1997); *Harris County v. Cypress Forest Pub. Util. Dist.*, 50 S.W.3d 551, 553–54 (Tex.App.-Houston [14th Dist.] 2001, no pet.); *City of Hempstead v. Kmiec*, 902 S.W.2d 118, 122 (Tex. App.-Houston [1st Dist.] 1995, no writ); *City of San Antonio v. Dunn*, 796 S.W.2d 258, 261 (Tex.App.-San Antonio 1990, writ denied).

▪ Article I, section 17 of the Texas Constitution waives immunity from suit and liability for governmental taking, damage or destruction of private property "without adequate compensation."[17] TEX. CONST. art. I, § 17; *Gen. Servs. Commn. v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex.2001); *Cozby v. City of Waco*, 110 S.W.3d 32, 38 (Tex.App.-Waco 2002, no pet.). An intentional nuisance claim falls within the waiver of immunity provided by article I, section 17.[18] *See City of Abilene v. Downs*, 367 S.W.2d 153, 159 (Tex.1963); *Cozby*, 110 S.W.3d at 40; *Montgomery County v. Fuqua*, 22 S.W.3d 662, 667–68 (Tex.App.-Beaumont 2000, pet. denied).

## APPELLANTS' CLAIMS

Appellants allege causes of action for intentional pollution, intentional nuisance, fraud, intentional infliction of emotional distress, conspiracy, aggravation of work-related injury, breach of duty of good faith and fair dealing, intentional violation of statutes requiring an employer to maintain a safe workplace, and violation of the whistleblower statutes.

## THE WORKPLACE STATUTES

▪ Appellants contend that the statutes relative to a safe workplace, which they allege DISD violated, implicitly waive DISD's immunity from suit. A so-called "implicit waiver" of sovereign immunity arises when the statute at issue would be meaningless if immunity was not waived thereby. *See Wichita Falls St. Hosp.*, 106 S.W.3d at 697; *Kerrville State Hosp.*, 28 S.W.3d at 5–6; *Barfield*, 898 S.W.2d at 296–97. Thus, Texas courts have determined that some statutes necessarily waive immunity even though they do not do so expressly. *See, e.g., Kerrville State Hosp.*, 28 S.W.3d at 5–10 (State Applications Act [TEX. LAB.CODE ANN. §§ 501.001–501.051 (Vernon 1996 & Supp.2004)] which expressly incorporates anti-retaliation law [TEX. LAB.CODE ANN. § 451.001 (Vernon 1996)]); *Barfield*, 898 S.W.2d at 296–99 (political subdivisions workers' compensation statute [TEX. LAB.CODE ANN. § 504.002 (Vernon Supp.2004)] which expressly incorporates anti-retaliation law); *Alamo Community College Dist. v. Obayashi Corp.*, 980 S.W.2d 745, 747–48 (Tex.App.-San Antonio 1998, pet. denied) (ch. 130 of Education Code); *see also Tex. Educ. Agency v. Leeper*, 893 S.W.2d 432, 446

---

17. Article I, § 17 provides in pertinent part, "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person...." TEX. CONST. art. I, § 17.

18. "Negligent" nuisances are not actionable under article I, § 17. *See Steele v. City of Houston*, 603 S.W.2d 786, 790–92 (Tex.1980); *Cozby v. City of Waco*, 110 S.W.3d 32, 40 (Tex.App.-Waco 2002, no pet.); *Golden Harvest Co. v. City of Dallas*, 942 S.W.2d 682, 689 (Tex.App.-Tyler 1997, writ denied).

(Tex.1994) (Uniform Declaratory Judgments Act waives immunity from suit in actions brought to construe legislative pronouncements); *but see Tex. Nat. Resource Conservation Commn. v. IT–Davy*, 74 S.W.3d 849, 855–56 (Tex.2002) (UDJA does not waive immunity from suit in actions "against state officials seeking to establish a contract's validity, to enforce performance under a contract, or to impose contractual liabilities").

The two statutes at issue are the Hazard Communication Act and section 411.103 of the Labor Code. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 502.001–502.020 (Vernon 2003); TEX. LAB.CODE ANN. § 411.103 (Vernon 1996). By its express terms, the Hazard Communication Act applies to the State and political subdivisions of the State, including "a public school." *See* TEX. HEALTH & SAFETY CODE ANN. § 502.003(11). In general terms, this enactment requires an employer to: (1) maintain a list of hazardous chemicals present at a work site and make employees aware of the list before working at the site; (2) provide appropriate safety data to employees who transport hazardous chemicals; (3) maintain appropriate labels on containers of hazardous chemicals; and (4) provide education and training to employees who use or handle hazardous chemicals. *Id.* §§ 502.005, 502.006, 502.007, 502.009.

■■■■ The Hazard Communication Act authorizes the Director of the Texas Department of Health or his representative to investigate complaints submitted by employees relating to violations of the Act. *Id.* § 502.011. The enactment provides for administrative penalties; it authorizes an employer to seek judicial review of such penalties under the Administrative Procedure Act; and it authorizes the Director to ask the attorney general or a district, county or city attorney to file suit against an employer for injunctive relief and for the assessment and recovery of civil penalties. *Id.* §§ 502.014–502.015. However, the Hazard Communication Act does not provide for an employee lawsuit to seek redress for violations of the statute. Accordingly, we conclude that the Hazard Communication Act does not waive immunity from a suit brought by an employee for alleged violations.

Section 411.103 of the Labor Code represents a non-substantive codification of section 3 of the former article 5182a.[19] *Compare* TEX. LAB.CODE ANN. § 411.103 *with* Act of May 27, 1985, 69th Leg., R.S., ch. 931, art. 11, § 1, sec. 3, 1985 Tex. Gen. Laws 3121, 3151, *repealed by* Act of Apr. 25, 1995, 74th Leg., R.S., ch. 76, § 9.54(c), 1995 Tex. Gen. Laws 458, 657; *see also Good v. Dow Chem. Co.*, 945 S.W.2d 877, 879 n. 1 (Tex.App.-Houston [1st Dist.] 1997, no writ). Section 411.103 provides:

**§ 411.103. Duty of Employer to Provide Safe Workplace**

Each employer shall:

(1) provide and maintain employment and a place of employment that is reasonably safe and healthful for employees;

(2) install, maintain, and use methods, processes, devices, and safeguards, including methods of sanitation and hygiene, that are reasonably necessary to protect the life, health, and safety of the employer's employees; and

(3) take all other actions reasonably necessary to make the employment and place of employment safe.

---

**19.** Because section 411.103 is a non-substantive codification, we cite it even though it did not take effect until several months after the incidents about which Appellants complain occurred.

TEX. LAB.CODE ANN. § 411.103.[20]

■ Unlike the Hazard Communication Act which expressly includes the State and its political subdivisions in the definition of employers to which that enactment applies, chapter 411 of the Labor Code does not include the State or any political subdivision of the State within its definitional provisions. *Compare* TEX. HEALTH & SAFETY CODE ANN. § 502.003(11) *with* TEX. LAB.CODE ANN. § 411.102(3) (Vernon 1996). Instead, it appears that chapter 411 is aimed solely at private employers. *See, e.g.*, TEX. LAB.CODE ANN. § 411.101 (Vernon 1996) (chapter 411 concerned with safety "in industry and enterprise"), § 411.102(4) (Vernon 1996) ("[p]lace of employment means a location ... where ... trade, industry, or business is ... conducted" or "an employee is ... employed by another for direct or indirect gain"). Accordingly, we conclude that chapter 411 of the Labor Code does not constitute a legislative waiver of immunity from suit or liability. *See Foster v. Denton Indep. Sch. Dist.*, 73 S.W.3d 454, 462–63 (Tex.App.-Fort Worth 2002, no pet.)

For these reasons, we hold that neither of the workplace statutes which Appellants contend DISD violated waives DISD's immunity from suit.

## THE TORT CLAIMS

Appellants characterize their allegations that DISD intentionally violated the two workplace statutes cited above and aggravated their work-related injuries as intentional torts. Based on the foregoing hold-ing regarding the statutes, Appellants' characterization of these claims, and settled law, we conclude that all of Appellants' claims, with the exception of the whistleblower claim, constitute tort claims. *See Twin City Fire Ins. Co. v. Davis*, 904 S.W.2d 663, 666 (Tex.1995) (breach of duty of good faith and fair dealing); *Morgan v. Anthony*, 27 S.W.3d 928, 931 (Tex.2000) (intentional infliction of emotional distress); *City of Tyler v. Likes*, 962 S.W.2d 489, 504 (Tex.1997) (nuisance); *Juhl v. Airington*, 936 S.W.2d 640, 643–44 (Tex. 1996) (conspiracy); *Atlas Chemical Indus., Inc. v. Anderson*, 514 S.W.2d 309, 312–13 (Tex.Civ.App.-Texarkana 1974), *aff'd*, 524 S.W.2d 681 (Tex.1975) (pollution). As previously stated, a school district has immunity from suit for all torts, including intentional torts, except for those which arise from the operation or use of a motor vehicle. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.021, 101.051, 101.057(2); *Cypress Forest Pub. Util. Dist.*, 50 S.W.3d at 553–54; *Kmiec*, 902 S.W.2d at 122; *Dunn*, 796 S.W.2d at 261. Appellants' allegations do not involve the use of a motor vehicle. Thus, DISD is immune from these tort allegations except to the extent Appellants' nuisance and pollution claims are actionable under article I, section 17.

To invoke article I, section 17, the condition about which a plaintiff complains "must substantially interfere with a person's use and enjoyment of land...." *Golden Harvest Co. v. City of Dallas*, 942 S.W.2d 682, 689 (Tex.App.-Tyler 1997, writ denied). This Court and others have stat-

---

**20.** The former article 5182a, section 3 provided:

DUTIES OF EMPLOYERS. Every employer shall furnish and maintain employment and a place of employment which shall be reasonably safe and healthful for employees. Every employer shall install, maintain, and use such methods, processes, devices, and safeguards, including methods of sani-tation and hygiene, as are reasonably necessary to protect the life, health, and safety of such employees, and shall do every other thing reasonably necessary to render safe such employment and place of employment. *See* Act of May 27, 1985, 69th Leg., R.S., ch. 931, art. 11, § 1, sec. 3, 1985 Tex. Gen. Laws 3121, 3151 (repealed 1995).

ed this as a requirement that the condition must "in some way constitute[ ] an unlawful invasion of property or the rights of others...." *Cozby*, 110 S.W.3d at 40 (quoting *City of Saginaw v. Carter*, 996 S.W.2d 1, 3 n. 3 (Tex.App.-Fort Worth 1999, pet. dism'd w.o.j.)); *Shade v. City of Dallas*, 819 S.W.2d 578, 581 (Tex.App.-Dallas 1991, no writ); *accord Gotcher v. City of Farmersville*, 137 Tex. 12, 14, 151 S.W.2d 565, 566 (1941); *Stein v. Highland Park Indep. Sch. Dist.*, 540 S.W.2d 551, 553 (Tex.Civ. App.-Texarkana 1976, writ ref'd n.r.e.). Appellants contend that DISD's conduct is actionable under these latter cases because it interfered with their "rights" to a safe workplace. We reject this interpretation.

Each of the cases on which Appellants rely involved government interference with the plaintiff's property. *See Carter*, 996 S.W.2d at 3 (allegation that city "intentionally flooded [plaintiffs'] property by diverting surface water"); *Golden Harvest*, 942 S.W.2d at 684 ("City released more water from Lake Ray Hubbard than normal, admittedly flooding Golden Harvest's property"); *Stein*, 540 S.W.2d at 552 (allegation that school district constructed building less than minimum distance from adjoining properties prescribed by applicable zoning ordinances which "resulted in continuing and repeated trespasses by students and others upon [plaintiff's] property"); *Atlas Chemical Indus.*, 514 S.W.2d at 312 ("Due to the Atlas effluent, the creek waters [on plaintiff's land] have been rendered useless and grass and vegetation in the areas of the stream have been destroyed.").

The "rights" part of this equation arises when the government's actions do not cause physical damage to a plaintiff's property but interfere with the plaintiff's right to enjoy his property. *See, e.g., Texas Dept. of Transp. v. City of Sunset Valley*, 8 S.W.3d 727, 732–33 (Tex.App.-Austin 1999) (noise and light pollution).

■ Appellants do not allege that DISD's conduct interfered in any manner with their own property. Accordingly, their nuisance and pollution claims do not fit within the waiver of immunity provided by article I, section 17 of the Texas Constitution. *See Foster*, 73 S.W.3d at 460–61 (classroom condition not a taking under article I, section 17); *Gotcher*, 137 Tex. at 14–15, 151 S.W.2d at 566 (municipal cesspool located on city property does not constitute a nuisance actionable under art. I, § 17 when child entered city property and drowned therein).

For these reasons, we conclude that DISD conclusively established its immunity from suit on all of Appellants' tort claims. Because DISD is immune from Appellants' tort claims, we need not address DISD's alternative argument that these claims are barred by the exclusivity of remedies provided by the workers' compensation statutes.

### THE WHISTLEBLOWER CLAIM

DISD alleges in the no-evidence portion of its motion for summary judgment that there is no evidence to support any element of Appellants' whistleblower claim. DISD raised no other grounds for summary judgment on this claim. DISD avers for the first time on appeal that Appellants failed to properly exhaust their administrative remedies before pursing their whistleblower claim.

### Exhaustion of Remedies

■ In a summary judgment appeal, we consider only those grounds "the movant actually presented to the trial court" in the summary judgment motion. *See Cincinnati Life Ins.*, 927 S.W.2d at 625; *Fletcher*, 26 S.W.3d at 74. However, exhaustion of remedies has frequently been characterized as a jurisdictional prerequisite in a case in which an administrative

remedy is provided. *See Wilmer–Hutchins Indep. Sch. Dist. v. Sullivan*, 51 S.W.3d 293, 294 (Tex.2001) (per curiam); *Permian Basin Community Ctrs. v. Johns*, 951 S.W.2d 497, 502 (Tex.App.-El Paso 1997, no writ); *Gregg County v. Farrar*, 933 S.W.2d 769, 777 (Tex.App.-Austin 1996, writ denied). Issues relating to the court's subject-matter jurisdiction may be raised for the first time on appeal by the parties or by the court *sua sponte*. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998); *Tex. Assn. of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445–46 (Tex.1993).

This discussion must be tempered, however, by the Supreme Court's decision in *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71 (Tex.2000). As some courts have recognized, *Dubai Petroleum* effected a significant change to the jurisdictional landscape. *See Hill v. Bd. of Trustees of the Ret. Sys. of Tex.*, 40 S.W.3d 676, 678 (Tex.App.-Austin 2001, no pet.) (citing *Sierra Club v. Tex. Nat. Resource Conservation Commn.*, 26 S.W.3d 684, 689 (Tex.App.-Austin 2000) (Kidd, J., concurring), *aff'd*, 70 S.W.3d 809 (Tex.2002)); *Godley Indep. Sch. Dist. v. Woods*, 21 S.W.3d 656, 658 n. 1 (Tex.App.-Waco 2000, pet. denied).

In *Dubai Petroleum*, the Supreme Court recognized that not every statutory prerequisite to suit is a jurisdictional requirement. *See Dubai Petroleum*, 12 S.W.3d at 76; *Sierra Club*, 26 S.W.3d at 687. District courts in Texas are courts of general jurisdiction. *See Dubai Petroleum*, 12 S.W.3d at 75; *Sierra Club*, 26 S.W.3d at 687–88. This is borne out by the constitutional and statutory provisions which establish the jurisdiction of district courts.

Article V, section 8 of the Texas Constitution provides in pertinent part:

District Court jurisdiction consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body.

Tex. Const. art. V, § 8. Section 24.008 of the Government Code provides:

The district court may hear and determine any cause that is cognizable by courts of law or equity and may grant any relief that could be granted by either courts of law or equity.

Tex. Gov.Code. Ann. § 24.008 (Vernon 2004).

■ Because a district court is a court of general jurisdiction, "all claims are presumed to fall within the jurisdiction of the district court unless the Legislature or Congress has provided that they must be heard elsewhere." *Dubai Petroleum*, 12 S.W.3d at 75.

The current and former whistleblower statutes require that a plaintiff first pursue administrative remedies before turning to the courts for relief. *See* Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 1, sec. 554.006(a), 1993 Tex. Gen. Laws 583, 610 (amended 1995); Tex. Gov.Code Ann. § 554.006(a) (Vernon Supp.2004). Accordingly, we hold that this requirement is a jurisdictional prerequisite to the filing of a whistleblower suit in court because it requires that a whistleblower claim first be "heard elsewhere." *Accord Tex. S. Univ. v. Carter*, 84 S.W.3d 787, 792 (Tex.App.-Houston [1st Dist.] 2002, no pet.); *contra Univ. of Tex. Med. Branch at Galveston v. Barrett*, 112 S.W.3d 815, 819 (Tex.App.-Houston [14th Dist.] 2003, pet. filed); *see also Kshatrya v. Tex. Workforce Commn.*, 97 S.W.3d 825, 831–32 (Tex.App.-Dallas 2003, no pet.).

Appellants allege that their DISD supervisors engaged in retaliatory conduct on several occasions because of the reports

they made to TNRCC and TWCC. The record bears out that their complaints involve three specific instances:

(1) the June 1, 1995 incident in Lowrey's office where Watson and Lowrey had a heated conversation regarding the TNRCC matter during which Lowrey temporarily fired Watson and threatened to fire Perry;

(2) the July 21, 1995 incident in which Lowrey put Appellants on probation for insubordination; and

(3) the August 11, 1995 incident in which Hunter reassigned Watson and Perry to the P & G site despite their physicians' requests to the contrary.

Appellants instituted a grievance proceeding in accordance with DISD policy in early June 1995. The level one grievance hearing was held on June 7. The level two hearing was held in late August/early September. They filed suit on August 31, 1995. A level three grievance hearing was conducted in January 1996. The parties do not dispute that this grievance proceeding has never been finally resolved.

Under the whistleblower statutes in effect until June 15, 1995, a local government employee (including a school district employee) generally had to exhaust his administrative remedies before filing suit under the Act. *See* Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 1, sec. 554.006(a), 1993 Tex. Gen. Laws 583, 610 (amended 1995) (current version at TEX. GOV.CODE ANN. § 554.006(a)). However, the exhaustion requirement did not apply if the local government entity did not render a final decision in the administrative proceeding "before the 31st day after the date" the employee instituted the proceeding. *See* Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 1, sec. 554.006(d), 1993 Tex. Gen. Laws 583, 610 (amended 1995) (current version at TEX. GOV.CODE ANN. § 554.006(d) (Ver-

non Supp.2004)); *Farrar*, 933 S.W.2d at 776.

The Legislature amended the whistleblower statutes in 1995, significantly modifying the exhaustion of remedies requirement. The current statute provides that a public employee "must *initiate*" a grievance proceeding in accordance with the government entity's policies before filing suit. TEX. GOV.CODE ANN. § 554.006(a) (emphasis added). If the government entity does not render a final decision in the matter "before the 61st day after the date procedures are initiated under Subsection (a), the employee may elect to:"

(1) exhaust his administrative remedies, then file suit within 30 days after the administrative proceedings are exhausted; or

(2) terminate the grievance proceeding and file suit within 90 days after the date of the alleged retaliatory conduct.

*Id.* § 554.006(d). The amended whistleblower statutes apply to any "adverse personnel action taken against a public employee on or after the effective date of this Act." Act of May 25, 1995, 74th Leg., R.S., ch. 721, § 11, 1995 Tex. Gen. Laws 3812, 3814. The Act took effect on June 15, 1995. *See* Act of May 25, 1995, 74th Leg., ch. 721, 1995 Tex. Gen. Laws 3812, 3815. Adverse personnel actions taken prior to the effective date of the statute are governed by the former law. *See* Act of May 25, 1995, 74th Leg., R.S., ch. 721, § 11, 1995 Tex. Gen. Laws 3812, 3814–15.

■ Watson provided deposition testimony that Lowrey fired him at "[a]pproximately 10:00" a.m. on June 1, 1995 then reinstated him "at quitting time" on that date. Perry was present that morning, and Lowrey allegedly made threatening remarks to him as well. Appellants instituted a grievance proceeding shortly thereafter. This grievance proceeding has never been finally resolved. Because Ap-

pellants' administrative grievance proceeding was not resolved within thirty days after they initiated it, they did not have to await a final determination before filing suit.[21] *See* Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 1, sec. 554.006(d), 1993 Tex. Gen. Laws 583, 610 (amended 1995); *Farrar*, 933 S.W.2d at 776.

The other two alleged retaliatory acts occurred after the effective date of the amendments to the whistleblower statutes and after Appellants instituted their administrative grievance proceeding. Thus, it could be argued that Appellants should have initiated a separate grievance proceeding(s) with respect to these later incidents and should not have instituted suit until at least sixty-one days after initiating such proceedings. *See* TEX. GOV.CODE ANN. § 554.006(d). However, DISD does not contend that these subsequent incidents should be treated separately from the June 1 incident for purposes of the exhaustion requirements.

Moreover, DISD's grievance procedures provide in pertinent part:

All grievances or complaints arising out of an event or a series of related events must be addressed in one grievance filing. The grievance must be presented in writing and should contain all perti-

nent information to be considered in the resolution of the grievance. An employee is precluded from bringing separate or serial grievances or complaints arising from any event or series of events that has or could have been previously grieved.

Dallas Independent School District, Grievance Policies, § III, Procedural Rules (1) (1998).[22]

DISD's grievance policies require that "[a]ll grievances or complaints arising out of an event or a series of related events ... be addressed in one grievance filing." *Id.* The policies expressly prohibit "separate or serial grievances." *Id.* The retaliatory employment actions of which Appellants complain all flow from the June 1 incident. They promptly filed an administrative grievance after this initial incident. DISD policy prohibits the filing of "serial grievances" regarding "related" claims. Because Appellants' claims all flow from the June 1 incident, we hold that their whistleblower claim is governed in its entirety by the terms of the former statute.

Under the former statute, Appellants could file suit if DISD did not render a final decision in their grievance proceeding within thirty days after they began the

---

21. The individual DISD defendants/appellees contend in their summary judgment motion that Appellants claims "clearly" do not arise under the former version of the statute because they filed suit in Ellis County (the residence of one of the individual defendants). The version of the whistleblower statutes applicable to this case provides for venue in the county of the employee's residence or Travis County. *See* Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 1, sec. 554.007 (amended 1995) (current version at TEX. GOV.CODE ANN. § 554.007(b) (Vernon Supp.2004)). The current statute provides for venue in Dallas County (the county in which the cause of action accrued) or in "any county in the same geographic area that has established with the county in which the cause of action arises a

council of governments or other regional commission under Chapter 391, Local Government Code." TEX. GOV.CODE ANN. § 554.007(b). The record is silent regarding whether Ellis County has established any such relationship with Dallas County. Nevertheless, this is a venue issue and has nothing to do with the merits of the lawsuit. Moreover, Appellees have never challenged venue in Ellis County.

22. The grievance policies are included in the summary judgment record as an attachment to the affidavit of Robert L. Johnston, which the individual DISD defendants/appellees offered in support of their summary judgment motion.

process. This grievance proceeding has never been finally resolved. Because Appellants' administrative grievance proceeding was not resolved within thirty days after they initiated it, they did not have to await a final determination before filing suit. *See* Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 1, sec. 554.006(d), 1993 Tex. Gen. Laws 583, 610 (amended 1995); *Farrar*, 933 S.W.2d at 776. Accordingly, the trial court (and this Court) have jurisdiction to review the merits of the whistleblower claim.

### DISD's No–Evidence Motion

Appellants respond in their second point that DISD is not entitled to a no-evidence summary judgment on their whistleblower claim because they did not have adequate time for discovery before the summary judgment hearing, because DISD's motion fails to specify with sufficient particularity those elements of the claim for which it contends there is no evidence, and because they presented sufficient controverting evidence to raise a genuine issue of material fact on each element challenged by the motion.

■ When a party contends that it has not had adequate time for discovery prior to a hearing on a no-evidence summary judgment motion, "it must file either an affidavit explaining the need for further discovery or a verified motion for continuance." [23] *Sosebee v. Hillcrest Baptist Med. Ctr.*, 8 S.W.3d 427, 431 (Tex.App.-Waco 1999, pet. denied) (quoting *Tenneco, Inc. v.*

*Enterprise Prods. Co.*, 925 S.W.2d 640, 647 (Tex.1996)); *Tempay, Inc. v. TNT Concrete & Constr., Inc.*, 37 S.W.3d 517, 520–21 (Tex.App.-Austin 2001, pet. denied); *Green v. City of Friendswood*, 22 S.W.3d 588, 594 (Tex.App.-Houston [14th Dist.] 2000, pet. denied).

■ Appellants contended in their response to DISD's summary judgment motion that the motion was premature because they had not had adequate time for discovery following the court's withdrawal of DISD's deemed admissions. They provided detailed explanations of the discovery they intended to pursue. However, they did not verify the motion. Nor did they attach an affidavit of counsel explaining the need for additional time. Appellants likewise did not file a motion for continuance in response to DISD's summary judgment motion.

For these reasons, Appellants have not properly preserved this aspect of their second point for our review. *See* Tex.R.App. P. 33.1(a)(1); *Crow v. Rockett Special Utility Dist.*, 17 S.W.3d 320, 328–29 (Tex.App.-Waco 2000); *Sosebee*, 8 S.W.3d at 431.

■ Appellants contend that DISD's no-evidence motion is defective because it does not adequately specify those elements of their whistleblower claim for which there is no evidence. This Court has concluded that a nonmovant must object to a no-evidence motion which it contends does not provide adequate specificity in order to present such an issue for appellate review.

---

**23.** Texas courts applied this preservation requirement to traditional summary judgment motions before the adoption of the no-evidence summary judgment motion in 1997. *See, e.g., Tenneco, Inc. v. Enterprise Prods. Co.*, 925 S.W.2d 640, 647 (Tex.1996). In *Sosebee*, this Court applied this requirement to a summary judgment raising both traditional and no-evidence claims. *See Sosebee v. Hillcrest Baptist Med. Ctr.*, 8 S.W.3d 427, 431 (Tex.

App.-Waco 1999, pet. denied). Our research has disclosed at least two other courts which have applied this preservation requirement to no-evidence summary judgment motions. *See Tempay, Inc. v. TNT Concrete & Constr., Inc.*, 37 S.W.3d 517, 520–21 (Tex.App.-Austin 2001, pet. denied); *Green v. City of Friendswood*, 22 S.W.3d 588, 594 (Tex.App.-Houston [14th Dist.] 2000, pet. denied).

*See Fletcher,* 26 S.W.3d at 72 n. 5 (citing *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 342 (Tex.1993); *Williams v. Bank One, Tex., N.A.,* 15 S.W.3d 110, 117 (Tex.App.-Waco 1999, no pet.)); *accord Walton v. City of Midland,* 24 S.W.3d 853, 857–58 (Tex.App.-El Paso 2000, no pet.); *Roth v. FFP Operating Partners, L.P.,* 994 S.W.2d 190, 195 (Tex.App.-Amarillo 1999, pet. denied); *contra Callaghan Ranch, Ltd. v. Killam,* 53 S.W.3d 1, 3 (Tex.App.-San Antonio 2000, pet. denied).

As noted, the San Antonio Court of Appeals does not agree with the preservation requirement we first enunciated in *Williams.* It appears that this disagreement centers around our differing interpretations of how *McConnell* should apply to no-evidence motions. In *McConnell,* the Supreme Court discussed the issue of whether a non-movant must raise an objection to a defective summary judgment motion to preserve the issue for appellate review. The Court identified three categories of defective summary judgment motions: one presenting no grounds; one presenting only certain grounds; and one in which the grounds are unclear. *See*

*McConnell,* 858 S.W.2d at 342–43. The Court concluded that only the latter category requires an objection. *Id.*

Concerning the first category, the Court explained that "if the grounds for summary judgment are not expressly presented in the motion for summary judgment itself, the motion is legally insufficient as a matter of law." *Id.* at 342. Concerning the latter category, the Court held that "[a]n exception is required should a non-movant wish to complain on appeal that the grounds relied on by the movant were unclear or ambiguous." *Id.*

Without explicitly stating so, we have determined that a no-evidence motion which asserts generally that there is no evidence of any element of a particular claim falls within the latter category. *See Fletcher,* 26 S.W.3d at 72 n. 5; *Williams,* 15 S.W.3d at 117; *accord Walton,* 24 S.W.3d at 857–58; *Roth,* 994 S.W.2d at 195. The San Antonio Court has determined that such a motion fits within the former category. *See Callaghan Ranch,* 53 S.W.3d at 3. We continue to believe that our approach is the correct one.[24]

24. A closer reading of *McConnell* supports this position. The Court cited *Lochabay v. Southwestern Bell Media, Inc.* as an example of a summary judgment motion in which "the grounds relied on by the movant were unclear or ambiguous." *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 342 (Tex. 1993) (citing *Lochabay,* 828 S.W.2d 167, 170 (Tex.App.-Austin 1992, no writ)). The motion in *Lochabay* alleged, "[Lochabay's] counterclaim citing [Bell's] use of deceptive trade practices is wholly unsupported by legal authority." *Lochabay,* 828 S.W.2d at 170. Conversely, the motion in *McConnell* alleged that there were "no genuine issues as to any material facts" without specifying a particular cause of action. *See McConnell,* 858 S.W.2d at 338 n. 1; *see also Bailey, Vaught, Robertson & Co. v. Remington Invs., Inc.,* 888 S.W.2d 860, 863, 867 n. 9 (Tex.App.-Dallas 1994, no writ) (summary judgment which asserted entitlement to judgment on all of defendant's

five counterclaims without specifying particular counterclaim(s) presented "no grounds" regarding the counterclaims rather than "unclear grounds"). From this, we conclude that a no-evidence motion which specifies a particular cause of action for which there is no evidence but does not identify a particular element of that cause of action on which the proof is lacking constitutes a motion which is "unclear or ambiguous" under the *McConnell* formulation.

It could be argued under this analysis that the motion the San Antonio court was reviewing in *Callaghan Ranch* should be included in the "no grounds" category because it failed to specify which of multiple causes of action there was no evidence to support. *See Callaghan Ranch, Ltd. v. Killam,* 53 S.W.3d 1, 3 (Tex.App.-San Antonio 2000, pet. denied). However, it is not clear from the court's opinion whether the plaintiffs were actually as-

Preservation requires not only an objection however. In the summary judgment context, a non-movant must also obtain a ruling on an objection to the form of a motion or supporting evidence to preserve the issue for appellate review. *See* Tex. R.App. P. 33.1(a)(2); Tex.R. Civ. P. 166a(c), (f); *Well Solutions, Inc. v. Stafford,* 32 S.W.3d 313, 316 (Tex.App.-San Antonio 2000, no pet.); *Crow,* 17 S.W.3d at 323–24. Under Rule 33.1, the non-movant sufficiently preserves the matter if the court either "expressly or implicitly" overrules his objection or refuses to rule on the objection. *See* Tex.R.App. P. 33.1(a)(2)(A); *Blum v. Julian,* 977 S.W.2d 819, 823 (Tex. App.-Fort Worth 1998, no pet.); *see also Well Solutions,* 32 S.W.3d at 316; *Frazier v. Khai Loong Yu,* 987 S.W.2d 607, 609–10 (Tex.App.-Fort Worth 1999, pet. denied) (discussing whether court implicitly sustained summary judgment objection).

■■■ In *Blum,* the Fort Worth Court of Appeals held that the fact that the court granted summary judgment "create[d] an inference that it implicitly reviewed and overruled [the non-movant's] objections." *Blum,* 977 S.W.2d at 823–24; *see also Frazier,* 987 S.W.2d at 610 (facts that court granted summary judgment and stated that it had reviewed all *competent* summary judgment evidence in reaching this determination "create[d] an inference that the court implicitly sustained [the non-movant's] objections"). The Fourteenth Court of Appeals in Houston and the San Antonio court have differed from the Fort Worth court in this regard by concluding that the granting of a summary judgment does not standing alone demonstrate that a trial court has overruled or sustained an objection to summary judgment proof. *See Well Solutions,* 32 S.W.3d at 317; *Dolcefino v. Randolph,* 19 S.W.3d 906, 925–27 (Tex.App.-Houston [14th Dist.] 2000, pet.

denied). We agree with the Houston and San Antonio courts in this regard.

■■■ We cannot discern from the mere fact that the court granted DISD's no-evidence motion that the court necessarily even considered Appellants' objections to the form of the motion. Accordingly, we conclude that Appellants did not obtain a ruling sufficient to preserve their complaint regarding the form of DISD's motion. *See Well Solutions,* 32 S.W.3d at 317; *Dolcefino,* 19 S.W.3d at 925–27. Accordingly, we address the merits of the motion.

The whistleblower statutes applicable to this case provide in pertinent part:

A state agency or local government may not suspend or terminate the employment of or discriminate against a public employee who in good faith reports a violation of law to an appropriate law enforcement agency.

Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 1, sec. 554.002, 1993 Tex. Gen. Laws 583, 610 (amended 1995) (current version at Tex. Gov.Code Ann. § 554.002 (Vernon Supp.2004)).

■■■ On appeal, the only element for which DISD contends Appellants have no evidence is causation. To establish causation, a whistleblower plaintiff must prove that his conduct in reporting a violation to the appropriate law enforcement authority "must be such that, without it, the employer's prohibited conduct would not have occurred when it did." *Texas Dep't of Human Servs. v. Hinds,* 904 S.W.2d 629, 636 (Tex.1995); *accord City of Fort Worth v. Zimlich,* 29 S.W.3d 62, 67 (Tex.2000).

■■■ If the conduct complained of "occurs not later than the 90th day after the date on which the employee reports a vio-

serting multiple legal theories in this declara-

tory judgment action.

lation of law, the [discriminatory conduct] is presumed, subject to rebuttal, to be because the employee made the report." Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 1, sec. 554.004, 1993 Tex. Gen. Laws 583, 610 (amended 1995) (current version at Tex. Gov.Code Ann. § 554.004(a) (Vernon Supp.2004)). Appellants reported their concerns about the P & G site to TNRCC on February 10. The first discriminatory conduct of which they complain occurred on June 1, more than ninety days thereafter. However, they made their report to TWCC on April 5, less than ninety days before the June 1 incident. Thus, the April 5 report could be viewed as the proverbial straw which broke the camel's back in terms of inciting Appellants' supervisors to take retaliatory action.

According to Watson's affidavit, "It became clear to [him] during the course of the [June 1] confrontation from statements made that Mr. Lowrey and Mr. Brogden were both upset over the fact that Mr. Perry and I were suspected to be the persons who were contacting state, federal, and local agencies about the conditions at the jobsite . . . ."

According to Lowrey's deposition, the June 1 encounter began when he called Watson to his office to discuss a separate matter. While standing in the hallway discussing it, they began to argue with one another. Lowrey continued:

> Then that's when I said, come in the office, I want to get some things straight about who's calling TNRCC and all the city government officials. And he went into the office, and I began to tell him, I told him I was tired of people calling down here. And he doesn't give me a chance to go any further and do anything and he got mad at me and said he wasn't going to discuss this in front of me anymore without proper [re]presentation.

Watson placed a call to the Texas State Teachers Association for assistance, but no one was available at that moment to come to the office. He reported this to Lowrey and continued to insist that he did not want to discuss the TNRCC matter without representation. The conversation grew more heated, and Lowrey called Strobel to come down and discuss the matter.

> That's when [Watson] began to want to leave. Said, I'm just going back on the job or something like that. I don't know. But he wanted to leave. And I told him, I said, you don't need to leave; we need to sit here and get this worked out; Mr. Strobel will be here just as soon as he can. And he said he didn't want to. And then Jeff Brogden came in about the time that we were talking about that.
>
> . . . .
>
> He persisted that he wanted to [leave]. I said, give me your badge and give me your keys because I don't want you to leave. And they're not supposed to be on any other facility without their identification. And then I told him, I made the comment that this is insubordination that you're doing and you might get fired for this, so please stay here . . . .

At that point, Lowrey physically removed Watson's pager from his belt and his badge from his shirt pocket.

DISD contends that this and other testimony establishes that the reason for the complained-of personnel actions was Watson's insubordination. Although this evidence could support a finding that Lowrey engaged in the complained-of conduct because of insubordination, the evidence does not conclusively establish this fact.

However, we review the evidence offered in connection with a no-evidence

summary judgment motion in the light most favorable to the non-movant, disregarding all contrary evidence and inferences. *See Robinson,* 998 S.W.2d at 410; *Moore,* 981 S.W.2d at 269. When we review the evidence in this light, particularly Lowrey's testimony that he called Watson into his office because he "wanted to get some things straight about who's calling TNRCC," we conclude that Appellants produced more than a scintilla of probative evidence to raise a genuine issue of material fact on the element of causation. *Id.* Accordingly, we sustain Appellants' second point.

## THE INDIVIDUAL APPELLEES' SUMMARY JUDGMENT

In their supplemental summary judgment motion, the individual Appellees contend that they are entitled to judgment as a matter of law on Appellants' tort claims because of DISD's immunity.

■■ Section 101.106 of the Tort Claims Act provides:

> A judgment in an action or a settlement of a claim under this chapter bars any action involving the same subject matter by the claimant against the employee of the governmental unit whose act or omission gave rise to the claim.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.106 (Vernon 1997). Under section 101.106, government employees are immune from liability on a plaintiff's tort claims to the extent the governmental unit by which they are employed is adjudicated to be immune from such claims. *See Dallas County Mental Health & Mental Retardation v. Bossley,* 968 S.W.2d 339, 343–44 (Tex.1998); *Texas Dep't of Mental Health & Mental Retardation v. Pearce,* 16 S.W.3d 456, 459 (Tex.App.-Waco 2000, pet. dism'd w.o.j.).

■■ We have already determined that DISD has immunity from suit on all of Appellants' common-law tort claims. Accordingly, the individual Appellees' are immune from any liability on these claims. Thus, we overrule Appellants' first point insofar as it challenges the summary judgment granted in favor of the individual Appellees on Appellants' tort claims.

Appellants state in their brief that their whistleblower claim is asserted against only DISD. Accordingly, we overrule their first point insofar as it could be construed to challenge the summary judgment granted in favor of the individual Appellees on the whistleblower claim.

## CONCLUSION

DISD and the individual Appellees established their entitlement to judgment as a matter of law on all of Appellants' tort claims. Accordingly, we affirm the judgment on the tort claims. Appellants presented more than a scintilla of evidence to defeat DISD's no-evidence summary judgment motion on their whistleblower claim. Accordingly, we reverse the judgment on Appellants' whistleblower claim against DISD and remand that portion of this cause to the trial court for further proceedings consistent with this opinion.

Chief Justice GRAY concurring and dissenting.

TOM GRAY, Chief Justice, concurring and dissenting.

The majority has characterized all of the conduct of DISD as flowing from the June 1, 1995 incident. Thus, they apply the whistleblower statute in effect on that date to the complaints about all the adverse employment actions. This is not correct. There are three discrete acts of adverse employment raised in the pleadings and summary judgment evidence about which Watson and Perry complain. They are as follows:

(1) June 1, 1995. It is alleged that on this date Watson and Lowrey had a heated conversation regarding the TNRCC matter during which Lowrey temporarily fired Watson and threatened to fire Perry;

(2) July 21, 1995. It is alleged that on this date Watson and Perry were put on probation.

(3) August 11, 1995. It is alleged that on this date Watson and Perry were reassigned to the P & G site despite their physicians' request to the contrary.

Because two of these acts occurred after the amendments to the statute regarding exhaustion of remedies, these acts are covered by the amended statute.

The enabling statute for the 1995 amendment specifically provides that it applies to "adverse personnel action taken against a public employee on or after the effective date of this Act." Act of May 24, 1995, 74th Leg., R.S., ch. 721, § 11, 1995 Tex. Gen. Laws 3812, 3815. Adverse personnel actions taken prior to the effective date of the statute are governed by the former law. *See Wagner v. Texas A & M University,* 939 F.Supp. 1297, 1321–1323 (S.D.Tex.1996). The determination of which law is applicable thus focuses on the specific adverse employment action about which complaint is made, not the first adverse action.

The logical application of the enabling statute to these facts is that each of the three specific instances of adverse employment action gave rise to a separate violation of the statute, and accordingly, the administrative process must be invoked

and exhausted as to each. A hypothetical based on the facts of this case provides a good example of why this must be the law. According to the pleadings, Watson was temporarily fired on June 1, 1995, in violation of the statute. What if Watson decided the violation was not significant and decided to not pursue it? Further assume, 91 days after the June 1, 1995 termination-for-a-day incident, Watson is fired, permanently. Is he barred from bringing a claim because he did not pursue his administrative remedy for the June 1, 1995 incident within the time frame required by the 1993 statute? That is the effect of the holding of the majority.

Weighing all the consequences of treating each of these specific acts as a single violation or as multiple violations, the purpose of the statute is best fulfilled by treating each specific adverse personnel action as a separate violation. The employee will be able to evaluate the adverse consequences of each alleged adverse personnel action and decide if it justifies bringing a claim and to what level the individual desires to pursue it.

The majority uses DISD's employment policy to overrule the clear language of the statute.[1] Neither DISD or this Court can cause DISD's policy to control what statute applies to each of the alleged adverse employment actions.

As noted above, Watson and Perry make three specific complaints about adverse personnel actions occurring on different dates. There is a significant question of whether Perry's allegation that Lowrey *threatened* to fire him on June 1, 1995 is

---

**1.** It is unclear to me whether an administrative proceeding was ever instituted with regard to the July and August adverse employment acts. It appears that under the DISD policy these complaints could have been made a part of the administrative proceeding already filed and being pursued by Watson and Perry. DISD asserts no administrative proceeding has ever been initiated with regard to these acts. In either event, the internal policy would not control the determination of which statute is applicable to which adverse personnel action.

an adverse employment action that is actionable; but a jurisdictional issue is not the proper manner to dispose of this claim. As to Perry, it may mean that he suffered no adverse employment action prior to the change in the whistleblower statute. The claims of adverse employment actions against Watson and Perry in July and August are claims that arose under the amended version of the whistleblower statute. It is not disputed that if the amended version of the whistleblower statute applies to the July and August claims Watson and Perry have not complied with the exhaustion requirements of that statute either because they did not commence any administrative proceeding or did not elect to terminate the procedure already begun. They simply filed suit and continued to pursue both. This they cannot do with regard to the claims that arose after June 15, 1995.

Watson and Perry properly invoked the trial court's jurisdiction for their complaints about the incidents which occurred in June under the prior version of the statute. These are the only complaints about which the trial court had jurisdiction. Accordingly, these are the only claims that I would remand to the trial court for determination. The trial court does not have jurisdiction of the July and August claims and properly dismissed those claims. Because the majority remands these claims to the trial court, I respectfully dissent.

I concur with the majority's disposition of Watson's and Perry's remaining issues.